IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) MARY BISHOP;<br>(2) SHARON BALDWIN;<br>(3) SUSAN G. BARTON; and<br>(4) GAY E. PHILLIPS,<br><br>    Plaintiffs,<br><br>v.<br><br>(1) UNITED STATES OF AMERICA,<br>ex rel. ERIC H. HOLDER, JR., in his<br>official capacity as Attorney General<br>of the United States of America; and<br>(2) SALLY HOWE SMITH, in her official<br>capacity as Court Clerk for Tulsa County,<br>State of Oklahoma.<br><br>    Defendants. | No. 04-CV-848-TCK-TLW |

**OPINION AND ORDER**

Before the Court is the Motion to Dismiss Governor Brad Henry and Attorney General W.A. Drew Edmondson for Lack of Subject Matter Jurisdiction and to Dismiss the State of Oklahoma as a Potential Party Defendant (Doc. 128).

**I.  Procedural History**

On November 3, 2004, Plaintiffs, two lesbian couples, filed a Complaint seeking declaratory relief that the Defense of Marriage Act ("DOMA"), codified at 1 U.S.C. § 7 and 28 U.S.C. § 1738C, and Article 2, § 35 of the Oklahoma Constitution (the "Oklahoma Amendment"), violate the United States Constitution. Plaintiffs originally brought suit against (1) the State of Oklahoma, *ex rel.* Drew Edmondson, in his official capacity as Attorney General of the State of Oklahoma ("Edmondson") and Brad Henry, in his official capacity as Governor of the State of Oklahoma ("Henry") (collectively "Oklahoma Officials"); and (2) the United States of America, *ex rel.* John Ashcroft,

in his official capacity as Attorney General of the United States of America and George W. Bush, in his official capacity as President of the United States. On August 16, 2006, the Court ruled on several pending motions, including motions to dismiss ("8/16/06 Order"). *See Bishop v. Okla. ex rel. Edmondson*, 447 F. Supp. 2d 1239 (N.D. Okla. 2006). Relevant to the currently pending motion, the Court allowed certain of Plaintiffs' constitutional challenges to proceed against the Oklahoma Officials over their objections. Specifically, the Court ruled that the *Ex Parte Young* doctrine applied, such that the Eleventh Amendment did not bar the relief sought against the Oklahoma Officials, *see id.* at 1255, and that Plaintiffs had constitutional standing to challenge one part of the Oklahoma Amendment, *see id.* at 1256-57. The Oklahoma Officials appealed this Court's application of the *Ex Parte Young* doctrine to deny the Oklahoma Officials their alleged sovereign immunity. The Court stayed the case pending a ruling by the Tenth Circuit.

On June 5, 2009, the Tenth Circuit issued an unpublished decision reversing this Court's "failure to dismiss the claims against the Oklahoma officials" and remanding the "case for entry of an order dismissing these claims for lack of subject matter jurisdiction." *See Bishop v. Okla. ex rel. Edmondson*, No. 06-5188, 2009 WL 1566802, at * 4 (10th Cir. June 5, 2009). The Tenth Circuit's reversal was based on Plaintiffs' lack of standing to pursue their claims against Edmondson and Henry.[1] The Tenth Circuit reasoned that its decision in *Bronson v. Swenson*, 500 F.3d 1099 (10th Cir. 2007), decided after this Court's 8/16/06 Order, was the "mirror-image" of the present case and controlled the outcome. *See Bishop*, 2009 WL 1566802, at * 2. In *Bronson*, the Tenth Circuit held that a couple lacked standing to challenge Utah's criminal prohibition on polygamy. Specifically,

---

[1] Because Plaintiffs' lack of standing was not raised on appeal, the Tenth Circuit exercised its *sua sponte* authority to examine this question. (*See id.* at * 2.)

the court held that the couple (1) could not satisfy the causation element of standing because the named defendant, the county clerk, had no authority to "initiate a criminal prosecution" against them, and (2) could not satisfy the redressability element of standing because enjoining the county clerk from enforcing the polygamy law would be a "meaningless gesture." *Bronson*, 500 F.3d at 1109-12. Applying *Bronson* to the facts presented in this case, the Tenth Circuit reasoned:

> [Plaintiffs] claim they desire to be married but are prevented from doing so, or they are married but the marriage is not recognized in Oklahoma. These claims are simply not connected to the duties of the Attorney General or the Governor. Marriage licenses are issued, fees collected, and the licenses recorded by the district court clerks. *See* Okla. Stat. Ann. tit. 28, § 31; Okla. Stat. Ann. tit. 43, § 5. "[A] district court clerk is 'judicial personnel' and is an arm of the court whose duties are ministerial, except for those discretionary duties provided by statute. In the performance of [a] clerk's ministerial functions, the court clerk is subject to the control of the Supreme Court and the supervisory control that it has passed down to the Administrative District Judge in the clerk's administrative district." *Spreight* [sic] *v. Presley*, 203 P.3d 173, 177 (Okla. 2008). *Because recognition of marriages is within the administration of the judiciary, the executive branch of Oklahoma's government has no authority to issue a marriage license or record a marriage.* Moreover, even if the Attorney General planned to enforce the misdemeanor penalty (a claim not made here), that enforcement would not be aimed toward the Couples as the penalty only applies to the issuer of a marriage license to a same-sex couple. Thus, the alleged injury to the Couples could not be caused by any action of the Oklahoma officials, nor would an injunction (tellingly, not requested here) against them give the Couples the legal status they seek.

*Bishop*, 2009 WL 1566802, at * 3 (footnote omitted) (emphasis added). Thus, the Tenth Circuit held that Plaintiffs lacked standing to sue the Oklahoma Officials because Plaintiffs' claims were not connected to the duties of these particular governmental employees. In so holding, the Tenth Circuit indicated that the Oklahoma governmental employee who does have a connection to Plaintiffs' claims is a district court clerk because he or she is responsible for issuing and recording marriage licenses. The Tenth Circuit went one step further and held that Oklahoma district court clerks are,

3

for purposes of issuing or recording a marriage license, considered "judicial personnel" because recognition of marriages is "within the administration of the judiciary." *Id.* at * 3.[2]

Following this ruling, Plaintiff retained new counsel. New counsel filed a motion for leave to amend the Complaint to: (1) "add the necessary Oklahoma official as a defendant in accordance with the Tenth Circuit order;" and (2) to amend "those claims that were considered inconsistent with the [8/16/06 Order]." (Am. Mot. for Leave to Amend 2.) The Court granted this motion, and Plaintiffs filed an Amended Complaint on August 10, 2009. Therein, Plaintiffs named "State of

---

[2] The Oklahoma case relied upon by the Tenth Circuit for this holding is *Speight v. Presley*, 203 P.3d 173 (Okla. 2008). In *Speight*, the plaintiff sued both the Oklahoma County District Court Clerk and the Oklahoma County Board of Commissioners, alleging negligent maintenance of court records following a wrongful arrest for a traffic citation that had actually been paid. In determining whether the board of commissioners could be held liable for a tort committed by the court clerk in the scope of her employment for purposes of the Oklahoma Governmental Tort Claims Act, the Court first acknowledged that a district court clerk is "both a county officer and an officer or 'arm' of the court." *Id.* at 177. After examining Oklahoma statutes regarding traffic citations and the role of the clerk in relation to traffic citations, the Court held that "Oklahoma statutes detailing the duties of the clerk of the district court when processing traffic cases conclusively establish that the clerk is acting on behalf of and at the direction of the courts when performing such duties." *Id.* Therefore, as to the board of commissioner's liability for the court clerk's actions, the Court held:

> The Board of County Commissioners is not part of the traffic court process nor do they have supervisory control over the district court clerk when engaged in that process. Neither is the Board the overseer of the Clerk's office with regard to court data that Clerk inputs into the OCIS system. Plaintiffs have pointed to no provisions that reflect any involvement of the Board of County Commissioners in the district court clerk's performance of ministerial duties on behalf of the courts pursuant to Oklahoma law. Where the evidentiary materials of record clearly establish that the Board of County Commissioners had no control over and no role to play in the clerk's actions, the Board will not be called upon to respond in damages under the doctrine of respondeat superior.

*Id.* at 178 (emphasis added). Thus, although district court clerks may not be considered judicial personnel in every role, the Tenth Circuit has definitively ruled that a district court clerk issuing or failing to issue a marriage license is functioning as "judicial personnel." *See Bishop*, 2009 WL 1566802, at * 3.

Oklahoma, ex rel. Sally Howe-Smith, in her official capacity as Court Clerk for Tulsa County" as a defendant.[3] Plaintiffs alleged:

> [Smith] is sued in her official capacity as Clerk of Tulsa County District Court. Pursuant to state law, she is the designated agent of the State of Oklahoma given statutory responsibility for issuing and recording marriage licenses. Plaintiffs Bishop and Baldwin sought the issuance of a marriage license from [Smith] but were refused solely because they were of the same sex.

(Am. Compl. ¶ 7.)

## II.    State's Motion to Dismiss

On August 19, 2009, following filing of the Amended Complaint, Sandra Rinehart of the Oklahoma Attorney General's Office entered an appearance on behalf of "Defendants the State of Oklahoma; Governor Brad Henry and Attorney General W.A. Drew Edmondson." (*See* Doc. 127.) On the same date, these parties filed a motion to dismiss ("State's Motion to Dismiss") essentially making two arguments: (1) the Court should enter an Order formally "dismissing" Henry and Edmondson; and (2) to the extent the Amended Complaint is construed as naming the State of Oklahoma ("State") as a separate defendant from Smith, State enjoys Eleventh Amendment immunity from suit.

Plaintiffs objected to State's Motion to Dismiss, contending that "the *ex rel* designation merely reflects the State's nominal interest in seeing its laws faithfully executed by its statutory agents; in contrast to [State's] authority, no claim is asserted against the State and it is not formally named as a party to this action." (Pls.' Resp. to State's Mot. to Dismiss 6.) Smith also objected to State's Motion to Dismiss, arguing that "[w]ithout the participation of the Oklahoma Attorney General, this Court will have a party, the Tulsa County Clerk, a county elected official performing

---

[3] Plaintiffs erroneously hyphenated the last name of Defendant Sally Howe Smith ("Smith") in the case caption as "Sally Howe-Smith."

5

a ministerial duty in the issuance of a marriage license, faced with the potential of arguing a matter of statewide concern." (Smith's Resp. to State's Mot. to Dismiss 4-5.) State responded to Smith's objection by arguing that a Tulsa County District Attorney who "is an employee of the State of Oklahoma, trained in, experienced in, and capable of addressing constitutional issues" is perfectly capable of effective representation of Smith. (State's Reply to Smith's Resp. to State's Mot. to Dismiss 6-7.)

    A.    <u>Edmondson and Henry</u>

In its ruling, the Tenth Circuit made clear that Plaintiffs lack Article III standing to sue Edmondson and Henry. Therefore, they are not proper parties to this lawsuit. Upon remand from the Tenth Circuit, instead of entering an order dismissing Edmondson and Henry, the Court allowed Plaintiffs to amend their complaint to omit Edmondson and Henry as defendants and name Smith. However, Plaintiffs' election to name the "State of Oklahoma ex rel. Sally Howe-Smith" as the new defendant apparently caused Edmondson and Henry lingering concerns that they were still parties to the lawsuit. To the extent necessary, this Court clarifies that Edmondson and Henry are no longer parties; this was mandated by the Tenth Circuit. Had Plaintiffs failed to amend their complaint to omit Edmondson and Henry, a formal dismissal of such parties would have been necessary. As the record stands, the Court does not deem a dismissal order necessary because the complaint has been amended to omit Edmondson and Henry as named defendants.[4]

---

[4] Following Plaintiffs' amendment of their complaint on August 10, 2009, neither Edmondson nor Henry have appeared in the caption of the case on CM/ECF. Nor has any party attempted to include their names in the case caption.

B.     State

The more substantive questions raised by State's Motion to Dismiss are: (1) whether, contrary to Plaintiffs' stated intent, State is named as a separate party to the lawsuit by virtue of the "State of Oklahoma *ex. rel.* Sally Howe Smith" designation in the caption; and (2) if so, whether State is entitled to dismissal based on the doctrine of Eleventh Amendment immunity.

As to the first question, the Court concludes that State is currently a named defendant in the lawsuit. Under Tenth Circuit and Oklahoma law, the "*ex rel.*" designation has no significance when used in relation to a defendant, and parties on both sides of the "*ex rel.*" designation are treated as named defendants. *See Osage Nation v. Okla. ex rel. Okla. Tax Comm'n*, 260 Fed. Appx. 13, 16 n.3 (10th Cir. 2007) (unpublished) ("A suit *ex rel.* is typically brought by the government upon the application of a private party (called a relator ) who is interested in the matter. Where, as here, the designation is used as to a defendant, we afford it no significance. Thus, we treat both Oklahoma and the Oklahoma Tax Commission as defendants.") (citation omitted); *Okmulgee County ex rel. Bd. of County Comm'rs of Okmulgee County v. Robnett*, 368 P.2d 502, 504 (Okla. 1962) ("Our research has led us to conclude that the phrase 'ex rel' is never used and in fact is inapplicable to a party named as a defendant. Therefore the phrase 'ex rel' appearing in 'The County of Okmulgee, ex rel. The Board of County Commissioners of Okmulgee County' is meaningless and must be considered as superfluous. It follows that the County Okmulgee and the Board of County Commissioners of said County were both named as defendant.").

As to the second question, the Court concludes that State is entitled to dismissal because it enjoys sovereign immunity from suit. "The Eleventh Amendment grants states sovereign immunity from suits brought in federal court by their own citizens, by citizens of other states, by foreign

7

sovereigns, and by Indian tribes." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 827 (10th Cir. 2007). The Eleventh Amendment "bars suit against a state unless the state waives immunity or Congress has validly abrogated immunity." *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002). Plaintiffs made no attempt to argue or demonstrate that either of these exceptions applies to their claims against State. Instead, they simply argue that State is not a separate party from Smith, an argument the Court rejects.[5] Further, Smith raised no legal doctrines that would deprive State of its sovereign immunity.[6] The Court finds that State is immune from suit and must be dismissed as a defendant.

The Motion to Dismiss Governor Brad Henry and Attorney General W.A. Drew Edmondson for Lack of Subject Matter Jurisdiction and to Dismiss the State of Oklahoma as a Potential Party Defendant (Doc. 128) is DENIED in part and GRANTED in part. The motion as related to Edmondson and Henry is denied as moot because they are no longer named defendants in the Amended Complaint. The motion as related to State is GRANTED.

Hereinafter, the case caption shall be as it appears on the front of this Opinion & Order.

---

[5] Plaintiffs did argue that the Eleventh Amendment does not bar their claim against Smith based on application of the *Ex Parte Young* doctrine. *See Nelson*, 295 F.3d at 1062 ("Under the *Ex parte Young* doctrine, individuals may bring suit for prospective injunctive relief to prevent ongoing constitutional violations against individual state officials named in their official capacity even if the state is immune."). However, resolution of this question is not necessary for purposes of the State's Motion to Dismiss.

[6] In her brief, Smith made a case for why State should waive its immunity and elect to permissively intervene upon this Court's certification of a constitutional question to the Oklahoma Attorney General pursuant to 28 U.S.C. § 2403(b). However, Smith did not make any showing that State had already waived its immunity.

8

For purposes of scheduling, the Court has determined that it is in the interest of justice to refrain from setting a schedule until the Court rules on the remaining pending motions to dismiss.[7] Accordingly, the parties will not be required to file a Joint Status Report at this time.

IT IS SO ORDERED this 24th day of November, 2009.

_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[7] Also pending are the Motion to Dismiss of Defendant Sally Howe Smith (Doc. 130) and the Motion to Dismiss of the United States (Doc. 137). These motions present different substantive issues and will be addressed by future order.