## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARY BISHOP,<br>SHARON BALDWIN,<br>SUSAN G. BARTON, and<br>GAY E. PHILLIPS,<br><br>   Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *ex rel.*, ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States of America; and SALLY HOWE-SMITH, in her official capacity as Court Clerk for Tulsa County, State of Oklahoma,<br><br>   Defendants,<br><br>and<br><br>BIPARTISAN LEGAL ADVISORY GROUP,<br><br>   Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-CV-848-TCK-TLW |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM ADDRESSING EFFECT OF *UNITED STATES v. WINDSOR* UPON PENDING MOTIONS AND CROSS MOTIONS FOR SUMMARY JUDGMENT

### INTRODUCTION

This action, challenging the federal Defense of Marriage Act ("DOMA") and Oklahoma's 2004 constitutional amendment banning same-sex marriage and the recognition of such marriages, has been stayed during the pendency of *United States v. Windsor*, ___ U.S. ___, 133 S.Ct. 2675, ___, L.Ed.2d ___ (2013) ("*Windsor*"). The

*Windsor* decision, announced by the United States Supreme Court on June 26,2013, struck down Section 3 of DOMA, declaring it to be constitutionally invalid.

While specifically limited to the constitutionality of DOMA's Section 3 (because the case below challenged only Section 3), *Windsor* has clear application to all claims advanced by the plaintiffs herein, and supports the central arguments made by the plaintiffs in their pending motions for summary judgment as to the constitutional infirmities of Sections 2 of DOMA and Part A and Part B of Oklahoma's same-sex marriage ban. Importantly, *Windsor* also provides further reasons for why various defenses, primarily raised by the Alliance Defending Freedom, as counsel to Defendant Sally Howe Smith, are now meritless in the wake of this monumental decision.[1]

## ARGUMENT AND AUTHORITIES

### I.   UNDER *WINDSOR*, OKLAHOMA'S MARRIAGE BAN VIOLATES PLAINTIFFS' FUNDAMENTAL RIGHT TO MARRY AND THE EXERCISE OF LIBERTIES INHERENT IN SUCH RIGHT

*Windsor* provides clear and explicit guidance for concluding Oklahoma's marriage ban violates both Plaintiffs' fundamental right to marry, and the exercise of liberties inherent in such fundamental right. *See* Pl. MSJ at 16-18, 30. In *Windsor*, the Supreme Court acknowledged that, although states enjoy wide latitude in defining the contours of

---

[1] Those claims are set forth in the Second Joint Status Report filed by the parties on August 24, 2011 (Doc. 187). It is not Plaintiffs' intention in this supplemental memorandum to duplicate the comprehensive arguments already presented to the Court via their summary judgment motion (Doc. 197) (hereinafter "Pl. MSJ"), and the supplemental authorities occurring pre-*Windsor*. Instead, Plaintiffs address herein the holding, reasoning and rationale of *Windsor* insofar as its relevance on Plaintiffs' claims and the defenses to those claims.

marriage, that power is unquestionably subject to constitutional restraints. *See Windsor*, slip. op. at 16 ("State laws defining and regulating marriage, of course, must respect the constitutional rights of persons."). And, as the Court explained, the injury imposed by DOMA "violates basic *due process* and *equal protection* principles." *Id*. at 20 (emphasis added). In ruling the federal government must provide marital benefits to married same-sex couples, and that married lesbian and gay persons and their children are entitled to equal dignity as well as equal treatment by their federal government, the Court acknowledged that marriage is not defined by the sex or sexual orientation of couples. In so finding, the Court's view contrasts sharply with the narrow views advanced herein by Defendant Howe Smith that there is no constitutional protection for same-sex marriage because the fundamental right to marry is limited by its historical limitation to heterosexual couples. (Def. Sally Howe Smith's Brief in Support of Cross-Motion for Summary Judgment at 17-18) (a "right to same-sex marriage has no roots in this nation's history and tradition.") (Doc. 216). Rather than lending support for a view that marriage should be reserved for only heterosexual couples, *Windsor* can only be read as recognition of the dignity inherent in all marriages, i.e. those between persons of different-sex and of the same-sex.

## II. *WINDSOR* CLEARLY SUPPORTS THE PROPOSITION THAT THE DENIAL OF MARRIAGE TO SAME-SEX COUPLES IS UNCONSTITUTIONAL AND CANNOT BE JUSTIFIED BY DISCRIMINATORY PURPOSES

Plaintiffs have submitted that Oklahoma's marriage ban (defining marriage as between only persons of the opposite sex; and excluding from recognition all same-sex marriages, even if validly performed elsewhere) cannot survive any level of constitutional

scrutiny. (Pl. MSJ at 22-27). *Windsor* confirms Plaintiffs' position that the illegitimate, discriminatory purposes of the Oklahoma marriage ban, under any level of scrutiny, require a finding of unconstitutionality. The *Windsor* Court confirmed that "[t]he Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor*, slip op. at 20 (quoting *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534-35 (1973)). Further, *Windsor* instructed that, "[i]n determining whether a law is motivated by an improper animus or purpose, '[d]iscriminations of an unusual character' especially require careful consideration." *Id.* (quoting *Romer v. Evans*, 517 U.S. 620, 633 (1996). *See also* Pl. MSJ at 26-27, 33-34, 36. Against these principles, *Windsor* held impermissible and unconstitutional DOMA's "avowed purpose" and "practical effect of …impos[ing] a disadvantage, a separate status, and a stigma" on same-sex couples' relationships by denying federal recognition to their marriages, and ensuring that "those unions will be treated as second-class." *Windsor*, slip op. at 3, 21-22. This holding should be applied with equal force to Oklahoma's marriage ban.

Specifically, *Windsor* reviewed the purposes cited by members of Congress for passing DOMA, including to (1) "defend the institution of traditional heterosexual marriage" (*id.* at 21); (2) prevent states from "redefine[ing] marriage to include same-sex couples (*id.*); and (3) express moral disapproval of homosexuality (*id.*). These legislative pronouncements accompanying the passage of DOMA coincide with the legislative history of the referendum leading to Oklahoma's adoption of its "mini-DOMA"marriage

ban. *See* Pl. MSJ at 19-22. The *Windsor* Court held that such legislative statements reflected an illegitimate "purpose and effect to disparage and to injure those whom the State, by its marriage laws, sought to protect in personhood and dignity." *Windsor*, slip op. at 25-26. The Court found such reasons constituted an improper purpose "to demean those persons who are in a lawful same-sex marriage." *Id*. at 25.

Here, in the instant case, Defendant Howe Smith has offered alternative justifications, formulated for litigation purposes, to defend the legislative rightness of Oklahoma's marriage ban. Similar alternative justifications were offered by the Bipartisan Legal Advisory Group ("BLAG") in its brief on the merits in *Windsor* (arguing that providing a stable structure to raise unintended and unplanned offspring, encouraging the rearing of children by their biological parents, and promoting childrearing by both a mother and father, were all legitimate government purposes sufficient to justify the Act under a "rational basis" review standard.) *See* BLAG Merits Brief at 44, *available at* http://www.scotusblog.com/case-files/cases/windsor-v-united-states-2/. These perceived justifications were not accepted by the high court. Importantly, in the instant action, Defendant Howe Smith has urged "rational basis" review on similar arguments. Howe Br. at 26-31 ("responsible procreation and childrearing" "optimal childrearing" "steering naturally procreative relationships into stable unions"), all as post-hoc justifications for Oklahoma's marriage ban.  These cavalier rationalizations, bearing little relationship to the ban's actual legislative purpose, have now been put to rest by *Windsor*. Just as Plaintiffs have urged this Court to do, the *Windsor* Court suggested the best place to find a law's purpose is by looking at the "history of…… enactment" and the

law's "own text." *Windsor*, slip op. at 21.    When that approach is taken, it becomes conclusively clear that the Oklahoma marriage ban rests on discriminatory and illegitimate purposes, i.e., the moral and religious disapproval of lesbian and gay persons. Pl. MSJ at 5-6, 19-23. The "unusual character" of Oklahoma's marriage ban for same-sex couples is a part of this constitutional showing. Because the Oklahoma marriage ban, under the *Windsor* test, has an improper purpose, such is justification in and of itself for it to be stricken - as a matter of law - as constitutionally illegitimate. *Windsor*, slip op. at 25.

### III.    THE *WINDSOR* COURT'S TACIT REJECTION OF ARGUMENTS PERTAINING TO *BAKER V. NELSON* CONFIRMS THAT DECISION'S NON-RELEVANCY ON THE ISSUES BEFORE THIS COURT

In her cross-motion for summary judgment, Defendant Howe Smith argued that the Supreme Court's one-line dismissal in the 1972 *Baker v. Nelson* decision controls. Howe Br. at 10-14 ("The Supreme Court has not expressly or by implication overruled *Baker*, nor do any of its later decisions undermine it.").[2] *Windsor* has undoubtedly foreclosed this already suspect argument, holding that those in a same-sex marriage do possess basic due process and equal protection rights. Clearly, the option of following *Baker v. Nelson* was available to the highest court. In fact, BLAG's brief on the merits in *Windsor* referenced the 40 year old decision, stating "such a summary dismissal is, of course, a decision on the merits and, while it does not have the same force before this

---

[2] *Baker*, 409 U.S. 810 (1972) dismissed, without opinion, an appeal from the Minnesota Supreme Court rejecting federal equal protection and due process challenges to the refusal to issue a marriage license to a same-sex couple. In Plaintiffs' view, *Baker* had already been doctrinally undermined by *Lawrence v. Texas* and *Romer v. Evans*. (Pl. MSJ at 16, n. 3).

Court as a decision reached after plenary review, it carries precedential effect." (BLAG Br. at 25-26, *available at* http://www.scotusblog.com/case-files/cases/windsor-v-united-states-2/.). Plaintiffs submit the *Windsor* decision has confirmed *Baker*'s lack of application to any of the constitutional issues pertaining to the Oklahoma marriage ban.

IV. **THE *WINDSOR* DECISION, STRIKING DOMA'S SECTION 3, MEANS OKLAHOMA'S MARRIAGE BAN DENIES PLAINTIFFS THOSE FEDERAL BENEFITS AND PROTECTIONS THAT OTHERWISE WOULD BE AVAILABLE TO THEM IF OKLAHOMA ALLOWED SAME-SEX MARRIAGES (PLAINTIFFS MARY BISHOP AND SHARON BALDWIN) AND RECOGNIZED SAME-SEX MARRIAGES VALIDLY ENTERED INTO (PLAINTIFFS SUSAN BARTON AND GAY PHILLIPS)**

In their pending motion for summary judgment, Plaintiffs Mary Bishop and Sharon Baldwin identified the tangible and intangible harms they suffer as a result of being denied the freedom to marry. Pl. MSJ, Ex. 1. As a result of the *Windsor* decision, those harms have dramatically increased. Plaintiffs Bishop and Baldwin now suffer from the denial of numerous federal protections they would otherwise be entitled to have if they could marry (to include the filing of joint tax returns, the social security spousal election and survivor benefits). In *Windsor*, the Supreme Court acknowledged the denial of rights and responsibilities that are available to all other married couples under more than 1,000 federal statutes. *Windsor*, slip op. at 2. Equally injurious from a constitutional protection standpoint is the fact that married lesbian and gay couples domiciled in Oklahoma and all other states with bans containing a non-recognition provision for same-sex marriages, will presumably be precluded from receiving benefits under any federal statute or regulation that ties their marriage status to the place where the parties reside or the law of their domicile.

Plaintiffs submit this result is inconsistent with *Windsor*'s overall rationale, one which repeatedly underscored the egregious unfairness suffered by same-sex couples. As observed by one constitutional scholar when discussing the most striking aspect about the *Windsor* opinion: [It] "is the direct, clear way that the Court seems to understand why DOMA is such an egregious violation of the constitution's equality guarantee under the Fifth Amendment. Words like 'demean,' 'degrade,' and 'humiliation' do not appear often in Supreme Court opinions in reference to unconstitutional laws. Yet..........the tone of the opinion almost suggests a sense of offense on the Court's part: 'the principal purpose and the necessary effect of this law are to demean those persons who are in a lawful same-sex marriage.'" Suzanne Goldberg, *A one-two punch to the nation's most prominent antigay laws*, *available at* http://www.scotusblog.com/2013/06/a-one-two-punch-to-the-nations-most-prominent-antigay-laws/) (June 26, 2013). These observations apply with equal force here to the Oklahoma marriage ban, particularly if allowed continuation in the aftermath of *Windsor*. Only a constitutional removal of Oklahoma's marriage ban as violative of Plaintiff's equal protection and due process rights will provide same-sex couples in Oklahoma all the federal benefits and responsibilities that are available now in 13 states and the District of Columbia.

V.   **THE DEMISE OF DOMA'S SECTION 3 MEANS THAT SECTION 2 SHOULD ALSO BE DECLARED UNCONSTITUTIONAL**

Section 2 of DOMA statutorily permits a state with a same-sex marriage ban to not recognize a same-sex marriage of its citizens for federal benefits purposes, even if such marriage was validly performed somewhere else. This is the status of Oklahoma citizens and Plaintiffs Susan Barton and Gay Phillips. The *Windsor* decision by necessity was limited to only Section 3.   Nevertheless, given the entirety of the rationale behind the holding, it defies legal logic to contend Section 2's constitutionality is not infirm as well. As constitutional scholar Steve Sanders has written:

> *Windsor* holds that same-sex marriages implicate "an essential part of the liberty protected by" the Constitution's guarantees of due process and equal protection. … Given that most day-to-day benefits and obligations of marriage are governed by state, not federal law, it is a bigger problem for most couples when a state denies the existence of their marriage than when Washington does so.  As much or more so than federal non-recognition, the crazy quilt of same-sex marriage recognition (to quote the Windsor majority again) "demean[s]" same-sex couples, "divests" them of "the duties and responsibilities that are an essential part of married life," "humiliates" their children, and signals that "their marriage is less worthy than the marriages of others."  Such "interference with the equal dignity of same-sex marriages" forces couples to "have their lives burdened, by reason of government decree, in visible and public ways." Moreover, like DOMA's Section 3, the discrimination legitimized by Section 2 and practiced by the majority of states is of an "unusual character."

Steve Sanders, *Next on the agenda for marriage equality litigators…*, *available at* http://www.scotusblog.com/2013/06/next-on-the-agenda-for-marriage-equalitylitigators/ (June 26, 2013). Simply put, that part of Oklahoma's marriage ban which refuses to recognize any otherwise valid same-sex marriage burdens the constitutional liberty now confirmed in *Windsor*. Likewise, Section 2 of DOMA which condones and facilitates the

disapproval of the marriage of Susan Barton and Gay Phillips must be declared invalid. Otherwise, DOMA's double standard for the marriages of same-sex and different-sex couples would remain. Under the reasoning of *Windsor*, Section 2 must follow Section 3 into constitutional extinction.  Clearly, Section 2's purpose coincides with and is part and parcel of fulfilling the legislative purposes of Section 3. Those purposes have now been expressly found in *Windsor* to be improper, and thus illegitimate.  In light of this finding, allowing Section 2 to continue as law would mean DOMA's double standard for the marriages of same-sex and different-sex couples would remain. *Windsor*'s underlying rationale cannot justify such a result. If there is a right to marry, then surely this liberty interest carries with it a right of marriage recognition.

Respectfully submitted,

*s/Don G. Holladay*
Don G. Holladay, OBA No. 4294
James E. Warner III, OBA No. 19593
HOLLADAY & CHILTON PLLC
204 North Robinson, Suite 1550
Oklahoma City, Oklahoma  73102
Telephone:   (405) 236-2343
Facsimile:   (405) 236-2349
*dholladay@holladaychilton.com*
*jwarner@holladaychilton.com*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on <u>July 29, 2013,</u> I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the current parties of record.

*s/Don G. Holladay*