IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARY BISHOP,<br>SHARON BALDWIN,<br>SUSAN G. BARTON, and<br>GAY E. PHILLIPS,<br><br>       Plaintiffs,<br><br>v.<br><br>SALLY HOWE-SMITH, in her official<br>capacity as Court Clerk for Tulsa<br>County, State of Oklahoma, *et al.*,<br><br>       Defendants,<br><br>and<br><br>BIPARTISAN LEGAL ADVISORY<br>GROUP,<br><br>       Intervenor Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.  04-CV-848-TCK-TLW |

**PLAINTIFFS' MOTION FOR JUDGMENT ON AMOUNT OF
APPEAL-RELATED ATTORNEYS' FEES
<u>AND BRIEF IN SUPPORT</u>**

Don G. Holladay, OBA No. 4294
James E. Warner III, OBA No. 19593
HOLLADAY & CHILTON PLLC
(405) 236-2343 Telephone
(405) 236-2349 Facsimile
204 N. Robinson, Ste. 1550
Oklahoma City, OK 73102

Joseph T. Thai, OBA No. 19377
300 Timberdell Rd.
Norman, OK 73019
(405) 204-9579 Telephone
*thai@post.harvard.edu*

December 5, 2014

# TABLE OF CONTENTS

FACTUAL BACKGROUND AND PROCEDURAL HISTORY . . . . . . . . . . . 2

ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    Civil Rights Fee Awards Serve Compelling Public Purposes . . . . 5

    II.    The Amount of Plaintiffs' Attorneys' Fees Are Highly
        Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Calculation of Lodestar and Consideration of
               Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    The Lodestar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

               1.    Reasonable Hours . . . . . . . . . . . . . . . . . . . . . . 9

               2.    Reasonable Hourly Rates . . . . . . . . . . . . . . . . 18

    III.    Plaintiffs Are Entitled To An Enhancement of The
        Lodestar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        A.    Plaintiffs Achieved an Extraordinary Result . . . . . . . . . 19

        B.    Application of the *Johnson* Factors Support
               Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

               1.    Time and Labor Required . . . . . . . . . . . . . . . . . 20

               2.    Novelty and Difficulty of the Question . . . . . . . . . 20

               3.    Requisite Skill . . . . . . . . . . . . . . . . . . . . . . . . . 20

               4.    Preclusion of Other Employment . . . . . . . . . . . . . 21

               5.    Customary Fee . . . . . . . . . . . . . . . . . . . . . . . . . 21

               6.    Whether the Fee is Fixed or Contingent . . . . . . . . 21

-i-

7.  Time Limitations Imposed by the Client or
    Circumstances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8.  Amount Involved and the Results Obtained . . . . . . 22

9.  Experience, Reputation and Ability of the
    Attorneys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

10. Undesirability of the Case  . . . . . . . . . . . . . . . . . . . . 22

11. Nature and Length of Professional Relationship
    With the Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

12. Awards in Similar Cases  . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Blum v. Stenson,*
    465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 18

*City of Riverside v. Rivera,*
    477 U.S. 561 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 19

*Richlin Sec. Service Co. v. Chertoff,*
    553 U.S. 571 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,*
    489 U.S. 782 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## OTHER FEDERAL CASES

*Awad v. Ziriax,*
    No. CIV-10-1186, 2014 WL 1660650 (W.D. Okla. Apr. 25, 2014) . . 19, 24

*Bishop v. Smith,*
    760 F.3d 1070 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bishop v. United States ex rel. Holder,*
    962 F. Supp.2d 1252 (N.D. Okla. 2014) . . . . . . . . . . . . . . . . . . . 4, 10, 22

*Case v. Unified Sch. Dist. No. 233,*
    157 F.3d 1243 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Clayton v. Thurman,*
    775 F.2d 1096 (10th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cooper v. Singer,*
    719 F.2d 1496 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Francia v. White,*
    594 F.2d 778 (10th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Garcia v. Wal-Mart Stores,*
    209 F.3d 1170 (10th Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Herrington v. Sonoma County,*
    655 F.Supp. 1111 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ginest v. Bd. of County Comm'rs of Carbon County,*
    423 F. Supp. 2d 1237 (D. Wyo. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jane L. v. Bangerter,*
    61 F.3d 1505 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Los Angeles Gay & Lesbian Community Services Center v. IRS,*
    559 F. Supp. 2d 1055 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Love v. Mayor, City of Cheyenne, Wyo.,*
    620 F.2d 235 (10th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Meinhold v. U.S. Dept. of Defense,*
    123 F.3d 1275 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Praseuth v. Rubbermaid, Inc.,*
    406 F.3d 1245 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ramos v. Lamm,*
    713 F.2d 546 (10th Cir.), *overruled on other grounds,*
    *Pennsylvania v. Del. Valley Citizens' Council For Clean Air,*
    483 U.S. 711, 725  (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Ramos Padro v. Commonwealth of Puerto Rico,*
    100 F. Supp. 2d 99 (D. Puerto Rico 2000) . . . . . . . . . . . . . . . . . . . . . 24

*Robinson v. City of Edmond,*
    160 F.3d 1275 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 2, 6-7, 12, 17-18

*Rodriguez v. Taylor,*
    569 F.2d 1231 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.,*
    205 F.3d 1219 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Vanguard Environmental, Inc. v. Kerin,*
    528 F.3d 756 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wyant v. Okst,*
    198 F.3d 311 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL STATUTES

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

## OTHER AUTHORITIES

Chris Casteel, *Pro Bono v. Deep Pockets in Same-Sex Marriage Case*
    THE OKLAHOMAN (Feb. 23, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Curtis Killman, *Opposition Strong to Gay Marriage, According to Poll*
    TULSA WORLD (June 30, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Richard Seamon,
    *Preparing for Oral Argument in the United States Supreme Court*
    50 S.C. L. Rev. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MARY BISHOP,                                    )
SHARON BALDWIN,                                 )
SUSAN G. BARTON, and                            )
GAY E. PHILLIPS,                                )
                                                )
            Plaintiffs,                         )
                                                )
v.                                              )        No.  04-CV-848-TCK-TLW
                                                )
UNITED STATES OF AMERICA, *ex*                  )
*rel.*, ERIC H. HOLDER, JR., in his             )
official capacity as Attorney General of        )
the United States of America; and               )
SALLY HOWE-SMITH, in her official               )
capacity as Court Clerk for Tulsa County,       )
State of Oklahoma,                              )
                                                )
            Defendants,                         )
                                                )
and                                             )
                                                )
BIPARTISAN LEGAL ADVISORY                       )
GROUP,                                          )
                                                )
            Intervenor Defendant.               )

## PLAINTIFFS' MOTION FOR JUDGMENT ON AMOUNT OF
## APPEAL-RELATED ATTORNEYS' FEES
## AND BRIEF IN SUPPORT

Plaintiffs Mary Bishop and Sharon Baldwin ("Plaintiffs") move for a

determination of the amount of appeal-related attorneys' fees, which were

awarded by the Tenth Circuit Court of Appeals on October 28, 2014, and

submit this memorandum and attached declarations in support of their motion.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1. This case was handled for nearly five years—and hundreds of attorney hours—on a *pro bono* basis by members of Plaintiffs' current legal team. Likewise, Defendant Sally Howe Smith benefited from free legal representation by virtue of a contract between the Tulsa County Board of Commissioners ("County") and an Arizona-based Christian legal advocacy organization, Alliance Defending Freedom ("ADF"). *See* Ex. 1, Cover Memorandum and Contract of Legal Representation ("Contract").

Under the Contract, ADF would provide Defendant with legal representation "at no charge" and litigation expenses relating to filing fees, travel, copying, depositions and experts. *Id.*, Contract ¶ 3. In exchange, the Contract permitted ADF to leverage this lawsuit for publicity and to use Defendant's image "to communicate with supporters of ADF and in

---

[1] This memorandum will not address Plaintiffs' prevailing party status, as the Tenth Circuit has already determined Plaintiffs are prevailing parties for purposes of appeal-related attorneys' fees and Defendant Howe Smith has conceded the same. Accordingly, the only remaining issue is the reasonableness of Plaintiffs' requested fees. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

furtherance of ADF's mission." *Id.*, Contract ¶ 8.[2] Furthermore, through the Contract, the County and ADF allocated the financial risks and rewards of this litigation. As a condition of ADF's "no charge" legal representation, the County specifically agreed to turn over to ADF all "fees and costs recovered from the opposing party or parties" in the event that Defendant prevailed, but to "indemnify and hold harmless ADF" as well as *pay any claims, costs attorney's fees or expenses of whatsoever nature awarded by the court*" if Plaintiffs were to prevail. *Id.*, Contract ¶ 5 (emphasis added). The determination of such court-awarded attorneys' fees that the County assumed responsibility for paying is now at issue.

2. Plaintiffs brought this lawsuit challenging certain amendments to the Oklahoma Constitution adopted by voters in November 2004 that restricted marriage in Oklahoma by definition to opposite-sex unions and also prohibited recognition of out-of-state same-sex marriages ("the Oklahoma Marriage Ban"). *See* OKLA. CONST. ART. 2, § 35. Plaintiffs sought, *inter alia*, a declaration that the definitional provision of the Oklahoma Marriage Ban

---

[2] *See* Chris Casteel, *Pro Bono v. Deep Pockets in Same-Sex Marriage Case*, THE OKLAHOMAN (Feb. 23, 2014), *available at* http://www.tulsaworld.com/pro-bono-v-deep-pockets-in-same-sex-marriage-case/article_751e27e8-38fe-587a-9bc7-7bf70d81a0f.html ("Unlike Holladay and a partner at his firm—and, now, a constitutional law professor at the University of Oklahoma who's helping them—Alliance Defending Freedom lawyers are getting paid, just not by Tulsa County. Though it doesn't disclose its donors, Alliance Defending Freedom reported $35 million in revenue on its 2011 tax return, mostly from grants and donations.").

3

(Part A) violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment. In addition to other forms relief, including an award of attorneys' fees, Plaintiffs requested a permanent injunction enjoining enforcement of the Oklahoma Marriage Ban.

On cross motions for summary judgment, this Court struck down Part A on Fourteenth Amendment equal protection grounds and permanently enjoined its enforcement. *See Bishop v. United States ex rel. Holder*, 962 F. Supp.2d 1252, 1296 (N.D. Okla. 2014). On July 18, 2014, the Tenth Circuit affirmed, holding that Part A and similar same-sex marriage bans "significantly burden[ed] the fundamental right to marry" in violation of the Fourteenth Amendment. *See Bishop v. Smith*, 760 F.3d 1070, 1080 (10th Cir. 2014). The Tenth Circuit subsequently awarded Plaintiffs appeal-related attorneys' fees as "prevailing part[ies]" within the meaning of federal law providing for such fees to promote the defense of civil rights and to deter their violation. 42 U.S.C. § 1988(b). The Tenth Circuit remanded to this Court for a determination of the amount of the fee award.

Plaintiffs now seek a determination of that amount. Plaintiffs obtained one of the most significant civil rights victories for Oklahomans in a generation—enabling thousands of same-sex couples in the state to attain the equal dignity, benefits, and protections of marriage for themselves and their families—and are entitled to their full request of reasonable appeal-related

attorneys' fees as well as an appropriate enhancement for their role in realizing this historic outcome.

## ARGUMENT AND AUTHORITIES

### I.  Civil Rights Fee Awards Serve Compelling Public Purposes

The Civil Rights Attorneys' Fee Awards Act of 1976 ("the Act"), codified at 42 U.S.C. § 1988, incentivizes parties to act as "private attorneys general" and deters the violation of constitutional and other civil rights by providing for the full award of reasonable and potentially substantial attorneys' fees to prevailing parties such as Plaintiffs. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989); *Cooper v. Singer*, 719 F.2d 1496, 1502 (10th Cir. 1983); *Francia v. White*, 594 F.2d 778, 781 (10th Cir. 1979). As the Tenth Circuit has observed:

> Section 1988 contemplates that both public interest lawyers and private law firms be provided with incentive to prosecute civil rights actions; the fee awards provide this incentive by increasing the ability and willingness of both groups to finance litigation they would otherwise be unable or unwilling to afford. . . . Potential liability for full value fee awards can deter violations of the civil rights laws, especially in situations in which the fee award represents a significant portion of a defendant's financial exposure. Establishing a lower fee when public interest lawyers represent plaintiffs will reduce the incentive to eliminate violations, and will provide defendants with less incentive to settle and more incentive to engage in dilatory tactics than would be present if private firm lawyers were involved. . . . The legislative history and the general purposes underlying the awarding of attorney's fees indicates that congressional intent is best fulfilled by calculating the fees for these groups in the same manner.

*Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.), *overruled on other grounds, Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725 (1987)); *see also City of Riverside v. Rivera*, 477 U.S. 561, 575-77 (1986); *Jones v. Wilkinson*, 800 F.2d 989, 991 (10th Cir. 1986); *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir. 1977).

An award of attorneys' fees should not be decreased merely because the fees will come from public funds and ultimately taxpayers, as doing so would dilute both the incentive value and the deterrence value of the fee award and hence frustrate the compelling public policies Congress intended to promote through § 1988. *See Ramos,* 713 F.2d at 552.

## II.  The Amount of Plaintiffs' Attorneys' Fees Are Highly Reasonable

### A. Calculation of Lodestar and Consideration of Enhancement

The proper procedure for determining a reasonable attorney's fee is to arrive at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar amount is presumptively reasonable, and moreover, where, as here, a prevailing party "achieves most or all of what [was] aimed for in a civil rights lawsuit," the party's attorney "should receive 'a *fully* compensatory fee.'" *Robinson v. City*

6

*of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) (emphasis added; citation omitted). This Court's order as to the amount awarded for reasonable attorneys' fees will not be overturned absent an abuse of discretion. *Vanguard Environmental, Inc. v. Kerin*, 528 F.3d 756, 758 (10th Cir. 2008).

The product of the reasonable hours times a reasonable rate does not end the inquiry, however, because other considerations may call for an upward adjustment of the fee upward. *See Hensley*, 461 U.S. at 434. For example, a court may enhance the fee where a plaintiff has obtained an excellent result. *Blum*, 465 U.S. at 899. A finding of exceptional success may be warranted by a counsel's performance, such as "victory under unusually difficult circumstances or with an extraordinary economy of time—or upon the result achieved—total victory of establishment of significant new law." *Ramos*, 713 F.2d at 557; *cf. Robinson*, 160 F.3d at 1283 (district court's reduction of lodestar amount was "legally indefensible in light of the fact that all of the unsuccessful claims were intertwined with the successful claims through a common core of facts or related legal theories" and the plaintiff had achieved "the principal goal of her lawsuit").

In addition, a court may enhance the lodestar where a review of the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), supports an enhancement. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and

7

difficulty of the question presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. All of the factors do not need to be considered in making a fee determination. *Francia v. White*, 594 F.2d 778, 782 (10th Cir. 1979). Rather, they are commended to the trial court for its use in arriving at a fair and reasonable judgment. *Id.*

## B.    The Lodestar

In the declarations of Don G. Holladay, James E. Warner III, and Joseph T. Thai, Plaintiffs' counsel have set forth their qualifications and experience, and have provided detailed time records showing the appellate work they reasonably performed in defending Plaintiffs' successful challenge to Part A of the Oklahoma Marriage Ban. *See* Exhibits 2-4. These time records show that as of December 5, 2014, Plaintiffs incurred fees in the

amount of $368,827.50.[3] Plaintiffs further request an award of litigation expenses, recoverable as part of the attorneys' fee award, in the amount of $1,942.37. *See* Holladay Decl. at Attachment B; *Garcia v. Wal–Mart Stores, Inc.*, 209 F.3d 1170, 1178-79 (10th Cir. 2000). For the reasons set forth below, the requested fees are highly reasonable.

### 1.   Reasonable Hours

The number of hours expended are highly reasonable given (1) the novel, complex, and historic issues raised in this case, (2) the exceptionally challenging and pressing circumstances on appeal, (3) the complete success that was achieved by the investment of those hours, (4) the conscientiously efficient staffing by Plaintiffs' counsel, and (5) the decision to forego fees for the hundreds of hours of trial work by Plaintiffs' counsel, the work of one valuable attorney on the legal team, and the research and support provided by non-attorneys.

---

[3] This sum does not include the total time required to prepare briefing and documentation to obtain the fee award or determine the amount. Plaintiffs reserve the right to supplement this motion with a timely request for a determination of attorneys' fees for all compensable hours reasonably expended in litigating the entitlement and amount of appeal-related attorneys' fees. *See Love v. Mayor, City of Cheyenne, Wyo.*, 620 F.2d 235, 237 (10th Cir. 1980) ("Plaintiff is also entitled to attorney's fees . . . for work done in resolving the fee issue itself") (citations omitted); *Wyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (prevailing § 1983 plaintiff "should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees.") (citations omitted); *Ginest v. Bd. of County Comm'rs of Carbon County, Wyo.*, 423 F. Supp. 2d 1237, 1241-42 (D. Wyo. 2006) (same).

1. As this Court well knows, the issues raised by Plaintiffs' challenge to Part A of the Oklahoma Marriage Ban were novel, complex, and historic. This case was one of the first cases filed after the wave of state constitutional amendments passed by voters in 2004, and is the longest running suit. It was filed well before the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013), at a time when there was no direct authority for Plaintiffs' equal protection and due process challenges. Indeed, it was strenuously argued by Defendant that Supreme Court precedent controlled this case and dictated a conclusion of constitutionality. *See* Defendant Sally Howe Smith's Cross-Motion for Summary Judgment and Brief in Support with Consolidated Opposition to Plaintiffs' Motion for Summary Judgment at 10-14 (relying on *Baker v. Nelson*, 409 U.S. 810 (1972)). This Court's 68-page opinion and order granting Plaintiffs summary judgment on January 14, 2014 was only the *second* court ruling on the constitutionality of a state same-sex marriage ban in the wake of *Windsor*, and considered at length the impact of *Windsor* on the Supreme Court's body of equal protection case law, as well as Plaintiffs' key arguments in support of their equal protection challenge and Defendants' extensive justifications for Part A. *See Bishop v. United States ex rel. Holder*, 962 F. Supp.2d 1252, 1274-96 (N.D. Okla. 2014).

2. In defending this Court's award of summary judgment on appeal, Plaintiffs' counsel faced considerable challenges that, out of professional

responsibility, prudence, and necessity, demanded the investment of hundreds of hours of dedicated work by each attorney on Plaintiffs' small legal team. To wit:

- Given the novelty and complexity of challenging a state marriage ban on equal protection grounds in a post-*Windsor* landscape—without the benefit of any controlling or persuasive appellate authority directly on point—Plaintiffs' counsel could not simply defend this Court's judgment solely on the rational-basis equal protection ground relied on by this Court. Instead, because the Tenth Circuit could affirm on any ground, *see Jordan v. U.S. Dept. of Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011)—and indeed ended up affirming on different grounds—and because the Supreme Court does not review issues not pressed or passed below, *see United States v. Williams*, 504 U.S. 36 (1992), Plaintiffs' counsel conscientiously researched, briefed, and prepared to defend at oral argument every reasonable path to victory. On the equal protection side, this entailed (a) developing arguments for heightened scrutiny under *Romer v. Evans*, 517 U.S. 620 (1995), *Lawrence v. Texas*, 539 U.S. 558 (2003), and *Windsor*; (b) explicating the nature of heightened scrutiny required by the *Romer-Lawrence-Windsor* trilogy; (c) squaring those arguments with existing Tenth Circuit precedent, including those seemingly calling for rational-basis review of sexual-orientation discrimination; (d) alternatively arguing for intermediate scrutiny of Part A on the ground that it discriminated on the basis of gender; (e) alternatively arguing for strict scrutiny of Part A as a classification that burdened the fundamental rights of a single class of citizens; (f) demonstrating that Part A failed all those levels of scrutiny; and (g) alternatively arguing that Part A failed rational basis review, given all the possible justifications for it. On the due process side, covering all reasonable paths to victory required developing arguments that (a) the right to marry is fundamental; (b) Part A infringed upon the fundamental right to marry; and (c) Part A thereby triggered and failed strict scrutiny. *See* Appellee's Principal and Response Br. 31-67.

- Defendant filed an exceedingly enlarged appellant's brief—a thorough 20,736 word defense of Part A, which was nearly 7,000 words over the 14,000 word limit for an opening brief in the Tenth Circuit. Defendant successfully moved the Tenth Circuit for such an enlargement on the grounds that (a) "[t]his case presents one of the most important legal

11

questions facing the federal judiciary today"; (b) "[a]nalyzing this legal question requires an understanding of marriage's role and public purpose as a complex social institution"; and (c) doing so also "necessitates a detailed consideration of the compelling interests furthered by that institution." *See* Appellant Sally Howe Smith's Unopposed Motion for Leave to File Oversized Brief at 2. Accordingly, Plaintiffs' research, briefing, and oral argument preparation conscientiously covered not only all viable grounds for affirmance, but also responses to Defendant's "detailed" and "complex" opposing arguments, including her contentions regarding (a) Supreme Court precedent foreclosing Plaintiffs' due process and equal protection challenges; (b) the history and public purpose of marriage in Oklahoma and throughout Western civilization; (c) federalism and states' rights; (d) the applicability of rational basis review; (e) the numerous justifications proffered by Defendant for upholding Part A not only under rational basis but also heightened scrutiny; and (f) a newly raised standing argument respecting an "unchallenged" state statutory ban on same-sex marriage. *See* Appellant's Principal Br. at 20-88.

- Given the need to systematically set forth all the viable grounds for affirmance as well as respond to Defendants' thorough contentions,[4] Plaintiffs' counsel sought and received permission from the Tenth Circuit to file an enlarged brief. As documented by the declarations and attachments of Plaintiffs' counsel, producing their 19,638 word brief required extensive research, drafting, reviewing, and revision to achieve the level of detail, depth, coverage, persuasion, and polish commensurate to the novelty, complexity, and importance of the issues on appeal relating to the constitutionality of Part A. Yet significantly, Plaintiffs' legal team divided the labor to leverage Prof. Joseph Thai's constitutional law and appellate briefing expertise to accomplish the brief-writing task as efficiently and effectively as possible. His assumption of primary responsibility for researching and drafting the brief, with supporting research and review of the drafts by co-counsel

---

[4] As the Tenth Circuit has noted, "[t]he Supreme Court has also recognized that part of an attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute." *Robinson*, 160 F.3d at 1284 (citing and quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (internal and other citations and quotations omitted)).

and non-attorney assistants, substantially reduced the number of hours the legal team as a whole would have had to devote to producing a draft of comparable coverage and effectiveness.

- The novelty, complexity, and importance of the case is also evidenced by the dozens of high quality amicus briefs from state and national level organizations filed in support of both sides on appeal, several of which were cited in the parties' briefs and referenced at oral argument. As evidenced by the declarations and attachments of Plaintiffs' counsel, outreach, coordination, and assistance with the historic number of amici supporting affirmance required a substantial investment of time. Again, Plaintiffs' legal team staffed the effort as leanly and strategically as reasonably possible, with lead counsel Mr. Holladay taking primary responsibility for amici support while Prof. Thai worked in parallel on the briefing.

- Given (a) the novelty, complexity, and importance of the issues presented on appeal; (b) the extensive briefing by the parties (including the addition of a 13,881 word reply brief by Defendant principally devoted to a defense of Part A); and (c) the vast volume of amici filings, preparation for oral argument required the nearly complete attention of Plaintiffs' legal team once briefing was completed. Yet again, Plaintiffs' legal team conscientiously staffed oral argument preparation for efficiency, with only lead counsel Mr. Holladay and Prof. Thai working together to shape overall oral argument strategy and methodically anticipate and craft answers to all plausible questions that the Tenth Circuit panel of three judges might ask based on the novel and complex issues, briefing, and caselaw. While thorough and time-consuming, such preparation is not only reasonable but highly advisable as a matter of sound appellate practice. *See, e.g.,* Richard Seamon, *Preparing for Oral Argument in the United States Supreme Court*, 50 S.C. L. Rev. 603-614 (1999).

- This Court's decision and the ruling in *Kitchen v. Herbert*, 961 F. Supp.2d 1181 (D. Utah 2013), led an unprecedented cascade of federal court rulings on the constitutionality of same-sex marriage bans across the country.[5] Plaintiffs' counsel conscientiously studied each decision

---

[5] *See, e.g., Bishop v. Smith*, 760 F.3d 1070 (10th Cir. July 18, 2014) (affirming *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014)); *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) (affirming *Kitchen*

for their persuasive value and incorporated them into briefing and argument preparation as warranted.

- Pursuant to Defendant's Motion to Expedite Appeal, briefing and oral argument occurred on an expedited basis, over a period of barely three months. *See* Tenth Circuit Order dated January 28, 2014 (granting Defendant's motion); Tenth Circuit Order dated January 29, 2014 (setting oral argument). This expedited schedule accentuated the challenging nature of the appeal by compressing the available time for research, briefing, and oral argument preparation, and thereby made the efforts by Plaintiffs' counsel to present a thorough and persuasive case in writing and oral argument all the more reasonable.

Once Plaintiffs prevailed in the Tenth Circuit, the appeal speedily entered a stage with different but no less demanding challenges. To wit:

- Certiorari briefing before the Supreme Court proceeded on an even more expedited basis than in the Tenth Circuit. Though Defendant had 90 days from the Tenth Circuit's decision to file a certiorari petition, she did so in approximately three weeks, on August 6, 2014, and Plaintiffs likewise filed their response within three weeks of the petition. The reason for the parties' expedited briefing was the acknowledged desire of Defendant as well as the parties in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), and *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), to have certiorari briefing completed in time for the Supreme Court to consider at its end-of-summer "long conference" in September. For their part, acting to preserve their opportunity to protect their appellate victory should the Supreme Court

---

*v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013)); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) (affirming *Bostic v. Rainey*, 970 F. Supp.2d 456 (E.D. Va. 2014)); *Brenner v. Scott*, 999 F. Supp. 2d 1278 (N.D. Fla. 2014); *Burns v. Hickenlooper*, No. 14-cv-01817-RM-KLM, 2014 WL 3634834 (D. Colo. July 23, 2014); *Baskin v. Bogan*, 12 F. Supp. 3d 1144 (S.D. Ind. 2014); *Wolf v. Walker*, 986 F. Supp. 2d 982 (W.D. Wis. 2014); *Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014); *Geiger v. Kitzhaber*, 994 F.Supp.2d 1128 (D. Or. May 19, 2014); *Latta v. Otter*, ___ F. Supp. 2d ___, 2014 WL 1909999 (D. Idaho May 13, 2014); *DeBoer v. Snyder*, 973 F. Supp. 2d 757 (E.D. Mich. 2014); *De Leon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. 2014); *Lee v. Orr*, No. 13-cv-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014).

desire to grant certiorari in a same-sex marriage case during that conference, Plaintiffs filed their response within the same expedited timeframe as the respondents in the other cases. Working within that extremely compressed timeline necessitated a heightened degree of efficiency in research and writing that made the modest hours devoted to those tasks highly reasonable and pale in comparison to the time typically spent by Supreme Court practitioners on certiorari briefing.

- On top of the challenge of expedited briefing, Defendant and Plaintiffs both faced the formidable strategic task of presenting their case as a particularly suitable one among the seven cases then-pending before the Supreme Court from the Fourth, Seventh, and Tenth Circuits. Again, Plaintiffs' counsel efficiently staffed the briefing, adding only a single attorney to the team, Supreme Court expert Prof. Jeffrey Fisher, the Director of the Stanford Law School Supreme Court Litigation Clinic, who took on primary responsibility with Prof. Thai for co-authoring Plaintiffs' response brief.

3. The Supreme Court's denial of certiorari in all cases at its long conference cemented Plaintiffs' status as prevailing parties. They married on the same day along with dozens of other same-sex couples across Oklahoma. There can be no question that Plaintiffs achieved complete and historic success in their challenge to Part A of the Oklahoma Marriage Ban for themselves as well as thousands of same-sex couples and their families across Oklahoma.

4. Plaintiffs' lead attorney, Mr. Holladay, conscientiously staffed this case leanly on appeal for efficiency and effectiveness. At the trial level, as this Court knows, Plaintiffs' legal team consisted of only Mr. Holladay and his law partner Mr. Warner. For the appeal in the Tenth Circuit, the legal team added Prof. Thai—whose qualifications are set forth in his declaration—for

15

his constitutional law and appellate expertise. And on certiorari, Prof. Fisher was added for his expertise as a leading Supreme Court litigator. The leanness of the appellate team of three to four attorneys—trial, appellate, and Supreme Court experts—enhanced the team's ability to fulfill its professional obligations in this challenging case as nimbly, efficiently, and effectively as possible. To be sure, the leanness of the staffing required much of each member of the team, but avoided any delay or redundancy that could have detracted from the quality of the representation or the reasonableness of the hours expended.[6]

5. The hours submitted by Plaintiffs' counsel for calculating the award of attorneys' fees are all the more reasonable considering the many compensable hours that Plaintiffs have foregone out of a good faith effort to arrive at an indisputably reasonable amount. First, Plaintiffs have not sought attorneys' fees for the hundreds of hours expended by Mr. Holladay and Mr. Warner over five years to secure the permanent injunction upheld on appeal. The familiarity of the legal team with the extensive record and procedural history in this case from that trial-level work directly and

---

[6] By comparison, Defendant's legal team consisted of four attorneys in the Tenth Circuit and doubled to eight on certiorari; the plaintiffs' legal team in *Kitchen* consisted of six attorneys in the Tenth Circuit and fourteen in the Supreme Court; and the plaintiffs' legal team in *Bostic v. Schaefer*, 670 F.3d 352 (4th Cir. 2014), consisted of thirteen attorneys in the Fourth Circuit and seventeen in the Supreme Court.

materially contributed to the efficiency and efficacy of the team's work on appeal. Second, Plaintiffs have not included the hours of valuable expert work by Prof. Fisher on certiorari developing strategy and co-authoring the response brief with Prof. Thai.[7] Third, Plaintiffs also have not included the hours of research assistance and support provided by non-legal members of the team, which Plaintiffs certainly would be entitled to claim. *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 580 (2008). And fourth, as discussed in each of the declarations of Mr. Holladay, Mr. Warner, and Prof. Thai, the hours submitted by Plaintiffs' counsel substantially discounted the hours actually expended in research, writing, and preparing for oral argument—though each spent lengthy days, nights, and weekends on this appeal during the expedited periods of briefing and oral argument preparation in the Tenth Circuit and briefing before the Supreme Court.

For all of the above reasons, and those in their declarations, Plaintiffs' counsel has conscientiously exercised billing judgment in a good faith effort to arrive at highly reasonable individual and collective hours. *See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir.2005); *Robinson* 160 F.3d at 1281.

---

[7] It is the policy of the Stanford Law School Supreme Court Litigation Clinic that Mr. Fisher directs not to recover attorneys' fees.

## 2.   Reasonable Hourly Rates

"The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998); *see also Blum*, 465 U.S. at 896 n. 11 (same). The focus must be on the prevailing market rate in the relevant community. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000). The court must determine the hourly rate by examining what the evidence shows the market commands for analogous litigation. *Id.* Moreover, the hourly rates must take into account what is necessary to attract skilled counsel without the prospect of certain payment contemporaneous with the many hours required for complex litigation of this kind, but instead with merely the possibility of a fee award if plaintiffs prevail after a potentially lengthy period of litigation, and then only for hours reasonably related to the prevailing claims. *See* Declaration of Micheal Salem at ¶ 35; *cf. Robinson*, 160 F.3d at 1281 ("It goes without saying that if a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere to offer their services. Such a result would do irreparable damage to our system of private enforcement of federal civil rights.").

Plaintiffs request compensation at the rate of $350 per hour for Mr. Holladay, $275 per hour for Mr. Warner, and $400 per hour for Prof. Thai. In support of the reasonableness of these hourly rates, Plaintiffs have submitted declarations setting forth their individual professional qualifications and experience, as well as a declaration from Micheal Salem, one of the premier civil rights attorneys in the State of Oklahoma, and Jimmy Goodman, a partner in one of the top law firms in Oklahoma. *See* Exs. 5-6. Additionally, Plaintiffs have attached the declarations supporting the hourly rate of Prof. Thai that were submitted in the case of *Awad v. Ziriax*, No. CIV-10-1186-M (W.D. Okla.), which the District Court for the Western District of Oklahoma recently granted in full in an order also attached for this Court's reference. *See* Thai Decl. at Attachments B-C and *Awad v. Ziriax*, No. CIV-10-1186-M, 2014 WL 1660650 (W.D. Okla. Apr. 25, 2014), Ex. 7.

## III.  Plaintiffs Are Entitled To An Enhancement of The Lodestar
### A.    Plaintiffs Achieved an Extraordinary Result

An enhancement to the lodestar calculation for an award under § 1988 case is appropriate where the attorney has obtained excellent or exceptional results in the case. *Hensley*, 461 U.S. at 435; *Clayton v. Thurman*, 775 F.2d 1096, 1098 (10th Cir. 1985). An enhanced award is appropriate here. As discussed above, under challenging circumstances and with extraordinary economy, Plaintiffs have secured a historic outcome for the fundamental

19

rights of thousands of same-sex couples and the equality of their Oklahoma families in a case presenting (in Defendant's words) "one of the most important legal questions facing the federal judiciary today."[8]

## B.   Application of the *Johnson* Factors Support Enhancement

### 1.   Time and Labor Required

As discussed above, the hours reflected in the declarations of Plaintiffs' counsel were reasonably, necessarily, and efficiently incurred, and the rates are on par with the standard and customary hourly rates charged by counsel in matters billed on an hourly basis.

### 2.   Novelty and Difficulty of the Question

The novelty, complexity, and difficulty of the issues in this case are discussed above and in the attached declarations.

### 3.   Requisite Skill

As noted, Plaintiffs' counsel was opposed by ADF, a large non-profit Christian legal organization with highly capable counsel specializing in religious litigation with expertise defending same-sex marriage bans. *See* www.alliancedefendingfreedom.org/about. In addition to the vast resources offered by ADF, Defendant was also represented by the Tulsa County District Attorney's Office. Plaintiffs were represented by only three attorneys on

---

[8] Appellant Sally Howe Smith's Unopposed Motion for Leave to File Oversized Brief at 2.

appeal and a fourth who was added at the certiorari stage. The requisite qualifications, skills, experience, and reputation possessed by Plaintiffs' counsel to handle such a novel, complex, and important case as this are addressed above and in the attached declarations.

### 4. Preclusion of Other Employment

As evidenced in the declarations of Plaintiffs' counsel, each attorney devoted substantial time to this litigation. As this Court is well aware, Mr. Holladay and Mr. Warner first appeared in this case in 2009, and from that time onward, the case required extensive attention. Had Mr. Holladay and Mr. Warner not committed their time to this action, they could have turned their attention towards other fully compensable matters at their firm. As for Prof. Thai, given his fulltime responsibilities as a tenured law professor, he necessarily sacrificed nights, early mornings, and weekends to work separately on this case fulltime over its intensive appellate lifespan.

### 5. Customary Fee

As the declarations of Mr. Salem and Mr. Goodman attest, along with the declarations and order from the *Awad* case, the rates charged were on par with the standard and customary hourly rates charged by counsel in matters billed on an hourly basis.

### 6. Whether the Fee is Fixed or Contingent

Counsel represented Plaintiffs on a *pro bono* basis.

### 7. Time Limitations Imposed by the Client or Circumstances

As discussed above, the expedited schedule for briefing and oral argument in the Tenth Circuit and extremely compressed briefing period on certiorari limited the hours Plaintiffs' counsel could reasonably dedicate to defending this Court's judgment on appeal.

### 8. Amount Involved and the Results Obtained

As discussed above, the results obtained this litigation are significant and historic.

### 9. Experience, Reputation, and Ability of the Attorneys

Counsel's qualifications, skills, experience, and reputation are addressed above and in the attached declarations.

### 10. Undesirability of the Case

From the time it was initiated through its appeal, few attorneys or law firms in Oklahoma would have been willing to invest the time and effort to pursue this case in light of the highly unpopular position that Plaintiffs advanced respecting the fundamental right and equality of same-sex couples to marry. As this Court itself noted, state voters passed the Oklahoma Marriage Ban by a margin of 1,075,216 to 347,303, or 76%. *See Bishop*, 962 F. Supp.2d at 1259 n.1. Throughout the litigation, Plaintiffs' lawsuit was subject to significant criticism in private and public, and by state officials as high as

the Governor. Furthermore, while the tide of public opinion on same-sex marriage may have begun to shift elsewhere in the country, in Oklahoma opposition has remained strong and steadfast throughout this litigation.[9] In addition, as discussed above, Plaintiffs faced an extremely challenging legal landscape at the onset of the litigation, and the likelihood of success remained uncertain at best on appeal. This case promised neither success, payment, nor popularity, but instead carried substantial risk of loss of time, opportunity, and reputation.

### 11.   Nature and Length of Professional Relationship with the Client

The relationship between Plaintiffs and their legal team has been substantial. Mr. Holladay and Mr. Warner have represented Plaintiffs for more than five years, and Prof. Thai fully integrated into the legal team and played a key role in successfully representing Plaintiffs on appeal.

### 12.   Awards in Similar Cases

The fee award requested in this case is reasonable compared to awards in similar cases.  For example, just this past year, in the aforementioned *Awad* case, the District Court for the Western District of Oklahoma awarded plaintiffs' counsel in that case the entirety of their requested fees at the full

---

[9] *See* Curtis Killman, *Opposition Strong to Gay Marriage, According to Poll*, TULSA WORLD (June 30, 2014), www.tulsaworld.com/news/courts/opposition-strong-to-gay-marriage-according-to-poll/article_386eb2aa-46f9-501b-808e-1c8be0c5bc24.html.

hourly rates requested—including Prof. Thai's rate of $400 an hour—for their successful challenge to a popular state ballot measure that would have amended the Oklahoma Constitution to ban state courts from considering "Sharia law." *See Awad*, 2014 WL 1660650 at *2 (awarding $303,333.49 in attorneys' fees and non-taxable expenses). Other cases similarly support the reasonableness of the requested fee award. *See, e.g., Meinhold v. U.S. Dept. of Defense*, 123 F.3d 1275, 1280 (9th Cir. 1997) (Naval officer discharged for stating he was gay awarded $421,487.65 in attorneys' fees); *Herrington v. Sonoma County*, 655 F. Supp. 1111, 1117 (N.D. Cal. 1987) (prevailing plaintiffs in civil rights action against county awarded $363,832.70 in attorney fees and $42,692.12 in expenses); *Los Angeles Gay & Lesbian Community Services Center v. IRS*, 559 F. Supp. 2d 1055, 1063 (C.D. Cal. 2008) (first openly gay organization to apply for tax-exempt status was entitled to $240,000 in attorneys' fees and $2,256.10 in costs for FOIA action to obtain documents related to organization's initial denial of tax-exempt status, as well as its later grant and reissuance); *Ramos Padro v. Commonwealth of Puerto Rico*, 100 F. Supp. 2d 99, 110 (D. Puerto Rico 2000) (organization of gay law enforcement officers and others who successfully challenged police regulation, which disciplined officers for associating with homosexuals, were awarded $193,553.86 in attorneys' fees and $13,787.40 in costs). Thus, the *Johnson* factors support the award of an enhanced fee.

24

## CONCLUSION

WHEREFORE, Plaintiffs requests that the Court award appeal-related attorney's fees in the amount of $368,827.50, non-taxable expenses in the amount of $1,942.37, and any enhancement this Court deems reasonable and merited.

Respectfully submitted,

*s/ Don G. Holladay*
Don G. Holladay, OBA No. 4294
James E. Warner III, OBA No. 19593
HOLLADAY & CHILTON PLLC
204 N. Robinson Ave., Suite 1550
Oklahoma City, OK 73102
(405) 236-2343 Telephone
(405) 236-2349 Facsimile
*dholladay@holladaychilton.com*
*jwarner@holladaychilton.com*

-and-

Joseph T. Thai, OBA No. 19377
300 Timberdell Rd.
Norman, OK 73019
(405) 204-9579 Telephone
*thai@post.harvard.edu*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on <u>December 5, 2014</u>, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the current parties of record.

*s/ Don G. Holladay*

26