## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARY BISHOP,<br>SHARON BALDWIN,<br>SUSAN G. BARTON, and<br>GAY E. PHILLIPS, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | Case No. 04-cv-848-TCK-TLW |
| vs. | )<br>) | |
| SALLY HOWE SMITH, in her official<br>capacity as Court Clerk for Tulsa County, | )<br>)<br>) | |
| Defendant. | ) | |

### DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON AMOUNT OF APPEAL-RELATED ATTORNEYS' FEES

Respectfully submitted,

/s/ John David Luton

James A. Campbell
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ  85260
(480) 444-0020 phone
(480) 444-0028 fax

John David Luton, OBA No. 11669
Assistant District Attorney
Tulsa County District Attorney's Office
500 S. Denver, Suite 832
Tulsa, OK. 74103
(918) 596-4814 phone
(918) 596-4804 fax
jluton@tulsacounty.org

January 5, 2015

## TABLE OF CONTENTS

I.      INTRODUCTION  ………………………………………………………….   1

II.     PLAINTIFFS' APPEAL-RELATED ATTORNEYS' FEES
        SHOULD BE REDUCED, AS A MATTER OF LAW, BY
        $135,880.00 IN NON-COMPENSABLE TIME  …………………………...   3

III.    PLAINTIFFS' APPEAL-RELATED EXPENSES
        SHOULD BE REDUCED, AS A MATTER OF LAW, BY
        $1,263.86 IN NON-COMPENSABLE EXPENSES  …………………………   10

IV.     PLAINTIFFS HAVE FAILED TO EXERCISE SUFFICIENT
        "BILLING JUDGMENT" IN THEIR CALCULATION AND
        PLAINTIFFS' APPEAL-RELATED ATTORNEYS' FEES SHOULD
        BE FURTHER SUBJECT TO A SUBSTANTIAL REDUCTION TO
        ACCOUNT FOR AN UNREASONABLE AMOUNT OF TIME  ……………   10

V.      AN ENHANCEMENT OF THE LODESTAR IS NOT WARRANTED  …….   20

VI.     CONCLUSION  …………………………………………………………...   22

## DEFENDANT SMITH'S EXHIBITS

PLAINTIFFS' REQUEST FOR EXPEDITIOUS RULING TO JOIN
THE PLAINTIFFS IN *KITCHEN* BEFORE THE TENTH CIRCUIT
COURT OF APPEALS AND POSSIBLY THE SUPREME COURT  ……………   Exhibit 1

MOTION TO EXPEDITE APPEAL WITH
PLAINTIFFS IN FULL AGREEMENT  ………………………………………...   Exhibit 2

PRINCIPAL AND RESPONSE BRIEF  ………………………………………..   Exhibit 3

REPLY BRIEF  …………..……………………………………………………..   Exhibit 4

APPELLEES' RESPONSE BRIEF IN SUPPORT OF CERTIORARI  …….……..   Exhibit 5

ORDER RE: ORAL ARGUMENT  …………………….…………………….........   Exhibit 6

TENTH CIRCUIT ORDER RE: ATTORNEYS' FEES  ….………………..........   Exhibit 7

DOCKET SHEET ON APPEAL 14-5003  …………………………………………   Exhibit 8

AFFIDAVIT OF ROBERT SARTIN ……………………..……………………   Exhibit 9

AFFIDAVIT OF JANDRA JORGENSON  ………………..……………………   Exhibit 10

TABLE OF AUTHORITIES

Page

*American Civil Liberties Union of Kentucky v. McCreary County, Kentucky*,
2009 WL 720904 (E.D. Ky. 2009) …………………………………………………   19

*Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014) ………………………………...   3

*Board of Trustees of Hotel and Restaurant Employees Local 25 v.*
*Madison Hotel, Inc.*, 43 F.Supp.2d 8 (D. D.C. 1999) …………………………….   19

*Blum v. Stenson*, 465 U.S. 886 (1984) ……………………………………………   20-21

*Bostic v. Rainey*, 970 F. Supp.2d 456 (E.D. Va. 2014) ………………………….   15, 17

*Brady v. Wal-Mart Stores, Inc.*, 2010 WL 4392566 (E.D.N.Y. 2010) ………………...   19

*Carter v. Sedgwick County, Kan.*, 36 F.3d 952 (10th Cir. 1994) ………………………   8

*City of Burlington v. Dague*, 505 U.S. 557 (1992) …………………………………..   21

*Copeland v. Marshall*, 641 F.2d 880 …………………………………………………..   14

*Critchlow v. First Unum Life Ins. Co. of America*, 377 F.Supp.2d 337 (W.D.N.Y. 2005)   19

*Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003) ……………………………...   6-7

*Gragert v. Lake*, 2014 WL 3828705 (W.D. Okla. 2014) ………………………………   7

*Heavener v. Meyers*, 158 F.Supp.2d 1278 (E.D. Okla. 2001) …………………………   8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ………………………………………   7, 12-15

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) ……………………………………….   15

*In re Reid*, 399 B.R. 307 (Bankr.W.D. Ky. 2008) ……………………………………..   19

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) …………….   12

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) …………………………   5, 15-17

*Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216 (9th Cir. 2010) …..   17

*League of Wilderness Defenders/Blue Mountains Biodiversity*
*Project v. U.S. Forest Service*, 2014 WL 3546858 (D. Or. 2014) ……………………..   17

TABLE OF AUTHORITIES (continued)

Page

*Lee v. Orr*, 2014 WL 683680 (N.D. Ill. 2014) ………………………………………… 16-17

*Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (10th Cir. 1986) …………………… 14

*Marquez v. Harper Sch. Dist. No. 66*, 546 Fed. Appx. 659 (9th Cir. 2013) …………... 17

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)    12, 20

*Perdue v. Kenny*, 559 U.S. 542 (2010) …………………………………………… 11-12, 19-22

*Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983) …………………………………    12, 14-15

*Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir. 1998) ………………………... 15

*Safeworks LLC v. Teupen Am. LLC*, 2010 WL 3033711 (W.D. Wash. 2010) ………… 17

*Smith v. Freeman*, 921 F.2d 1120 (10th Cir. 1990) …………………………………… 9

*Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*,
2011 WL 209164 (10th Cir. 2011) ………………………………………………….. 14

*U.S. v. Windsor*, 133 S.Ct. 2675 (2013) …………………………………………... 15-16

STATUTES

42 U.S.C. § 1988 ………………………………………………………………    8, 17, 21

42 U.S.C. § 1988(b) ……………………………………………………………... 3, 11

OTHER AUTHORITIES

Okla. Const. Art. XV § 1 …………………………………………………… 1

Okla. Const. Art. II § 35 …………………………………………………. 2

William M. Richman and William L. Reynolds, "Injustice On Appeal:
The United States Courts of Appeals in Crisis," p. 188 (Oxford Univ. Press 2013) …. 15

RULES

Fed.R.Civ.P. 54(d)(2) ……………………………………………………………    11, 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MARY BISHOP, | ) | |
| SHARON BALDWIN, | ) | |
| SUSAN G. BARTON, and | ) | |
| GAY E. PHILLIPS, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | Case No. 04-cv-848-TCK-TLW |
| vs. | ) | |
| | ) | |
| SALLY HOWE SMITH, in her official | ) | |
| capacity as Court Clerk for Tulsa County, | ) | |
| | ) | |
|     Defendant. | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON AMOUNT OF APPEAL-RELATED ATTORNEYS' FEES

Defendant Sally Howe Smith, in her official capacity as Court Clerk for Tulsa County ("Defendant Smith"), hereby submits her Brief in Opposition to Plaintiffs' Motion for Judgment on Amount of Appeal-Related Attorneys' Fees ("Plaintiffs' Motion"), in which she requests, on behalf of Tulsa County taxpayers, that the amount of Plaintiffs' Appeal-Related Attorneys' Fees be reduced by $135,880.00 in non-compensable time, by an additional $1,263.86 in non-compensable expenses and be reduced by an additional $123,208.64 in unreasonable and excessive time, and judgment entered on Plaintiffs' Motion in the amount of $108,475.00 in recoverable *appeal-related* attorneys' fees. Defendant Smith submits the following brief:

I.

Introduction

Like every public officer, prior to taking office, Defendant Smith swore to "support, obey, and defend the Constitution of the State of Oklahoma." Okla. Const. Art. XV, § 1. At the time that Defendant Smith denied a marriage license to Plaintiffs Bishop and Baldwin (both women) in February 2009, the Oklahoma Constitution provided:

A. Marriage in this state shall consist only of the union of one man and one woman. Neither this Constitution nor any other provision of law shall be construed to require that marital status or the legal incidents thereof be conferred upon unmarried couples or groups.

B. A marriage between persons of the same gender performed in another state shall not be recognized as valid and binding in this state as of the date of the marriage.

C. Any person knowingly issuing a marriage license in violation of this section shall be guilty of a misdemeanor.

Okla. Const. Art. II, § 35.  According to subsection C above, if Defendant Smith had not denied Plaintiffs Bishop and Baldwin a marriage license, she would have committed a crime.  Plaintiffs Phillips and Barton (both women) married in Canada in 2005, and wed again in California in 2008; they sought to have their out-of-state marriage recognized as valid by the State of Oklahoma, but Defendant Smith has nothing to do with recognizing out-of-state marriages.

Plaintiffs Bishop and Baldwin challenged the constitutionality of **Part A** of Okla. Const. Art. II, § 35.  They prevailed in district court[1] and on appeal *as Appellees* and are entitled to appeal-related attorneys fees for their Response Brief and Oral Argument.

Plaintiffs Barton and Phillips challenged the constitutionality of **Part B** of Okla. Const. Art. II, § 35.  They did not prevail in district court[2] nor on appeal *as Cross-Appellants* and *are not* entitled to attorneys fees for their Principal and Reply Briefs on Cross-Appeal or for their Oral Argument.

---

[1]On January 14, 2014, this Court issued its Opinion and Order granting Plaintiffs' Motion for Summary Judgment as to Part A of Art. II, § 35 and denying Defendant Smith's Cross-Motion for Summary Judgment on the same issue.  The Court "permanently enjoins enforcement of Part A against same-sex couples seeking a marriage license."  Opinion and Order, p. 67 (Dkt. #272).

[2]On January 14, 2014, this Court granted Defendant Smith's Cross-Motion for Summary Judgment as to Part B of Art. II, § 35, and dismissed Plaintiffs Phillips's and Barton's claims against her for lack of standing.  *See* Opinion and Order, pp. 67-68 (Dkt. #272).

Neither Plaintiffs Bishop and Baldwin nor Defendant Smith sought trial-related attorneys' fees. Following dismissal of the State of Oklahoma and the United States as party defendants, this case proceeded on appeal between all four Plaintiffs on one side, and Defendant Smith on the other. *See* Opinion and Order (Dkt. #148) (dismissing State of Oklahoma), and Opinion and Order (Dkt. #272) (dismissing United States).

On July 18, 2014, the Tenth Circuit Court of Appeals affirmed this Court's January 14, 2014 Opinion and Order, *see Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014), *cert. denied*, 135 S.Ct. 271 (Oct. 6, 2014), and on October 28, 2014, the Tenth Circuit Court of Appeals issued its decision on Plaintiffs' Application for Appeal-Related Attorneys' Fees:

> In their motion, plaintiffs seek an award of fees for all plaintiffs as prevailing parties under 42 U.S.C. § 1988(b).
>
> Upon consideration, the motion is granted in part and denied in part. *We deny the request for fees as it relates to an award for plaintiffs Barton and Phillips, who did not prevail on appeal. We grant the motion, however, as it relates to plaintiffs Bishop and Baldwin.* We remand to the United States District Court for the Northern District of Oklahoma to conduct all proceedings necessary to determine an appropriate award amount.

Tenth Circuit Order, Exhibit "7" (emphasis added).

## II.
### Plaintiffs' Appeal-Related Attorneys' Fees Should be Reduced, as a Matter of Law, by $135,880.00 in Non-compensable Time[3]

Before examining Plaintiffs' lodestar calculation, their appeal-related attorneys' fees must be reduced by $135,880.00 because the express line items in the billing records submitted by Plaintiffs reflect billings for amounts not permitted by law. Many of the time entries submitted by Plaintiffs' counsel are non-compensable as a matter of law, and this section deals with such time entries. The Tenth Circuit Court of Appeals "den[ied plaintiffs'] request for fees

---

[3]*See* Exhibit "A" to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account).

as it relates to an award for plaintiffs Barton and Phillips, who did not prevail on appeal." Tenth

Circuit Order, Exhibit "7." Accordingly, the following time entries are non-compensable:

| Entries | Attorney | Dates | Hours | Description |
|---------|----------|-------|-------|-------------|
| 3 | Warner | 1/23 | 0.2 hrs | work on cross-appellants' notice of appeal |
| 180 | Holladay | 3/16 | 2 hrs | work on cross-appellants' principal brief |
| 209 -16 | Holladay | 4/2 – 4/7 | 6 hrs | work on cross-appellants' reply brief |
| 106-14 | Thai | 4/1 – 4/7 | 37.1 hrs | work on cross-appellants' reply brief |

Based on such non-compensable time entries,[4] the amount of Plaintiffs' appeal-related attorneys

fees should be reduced by $17,695.00. *See* Exhibit "A," p. 1, to the Affidavit of Robert Sartin,

Exhibit "9" (itemized entry-by-entry account, including dollar amounts).

Despite Plaintiffs' claims to have excised all time entries pertaining to their losing cross-

appeal, the following entries *expressly* state that the time expended was in furtherance of *both* the

Cross-Appellants' Principal Brief *and* the Appellees' Response Brief:

| Entries | Attorney | Dates | Hours | Description |
|---------|----------|-------|-------|-------------|
| 155 | Holladay | 3/7 | 3 hrs | work on principal and response brief |
| 6-15 | Warner | 3/3 – 3/17 | 38.6 hrs | work on principal and response brief |
| 84 | Thai | 3/15 | 8.5 hrs | work on principal and response brief |

The evidence provided by Plaintiffs clearly shows that half of these time entries were expended

on the Principal Brief filed on behalf of the losing cross-appellants, and is therefore non-

compensable;[5] the amount of Plaintiffs' appeal-related attorneys fees should be reduced by an

additional $7,532.50 to account for such non-compensable time. *See* Exhibit "A," p. 1, to the

Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account, including dollar

amounts).

This appeal was wrapped up after three months, following oral argument on April 17,

2014. *See* Appellate Docket Sheet, Exhibit "8." Following oral argument, but prior to the Tenth

---

[4]*See* Affidavit of Robert Sartin, ¶¶ 12 & 14, Exhibit "9."

[5]*See* Affidavit of Robert Sartin, ¶ 13, Exhibit "9."

Circuit's decision in this case, attorneys Holladay and Thai continued to bill for their time reviewing non-controlling district court decisions, checking an oral argument before the Sixth Circuit Court of Appeals and reviewing and analyzing the Tenth Circuit's decision in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), *cert. denied*, 135 S.Ct. 265 (Oct. 6, 2014). Plaintiffs' evidence wholly fails to link such edification to Plaintiffs Bishop's and Baldwin's success on appeal. While Plaintiffs Bishop and Baldwin are entitled to *appeal-related* attorneys' fees, time spent reviewing non-controlling district court decisions after the case was at issue cannot reasonably be billed to one's client,[6] and hence, cannot reasonably be billed to one's adversary under a fee-shifting statute. Accordingly, the following time entries are non-compensable:

| Entries | Attorney | Dates | Hours | Description |
|---------|----------|-------|-------|-------------|
| 238-43 | Holladay | 6/13 – 6/25 | 3.4 hrs | review three district court decisions, attend to 6th Circuit oral argument and analyze *Kitchen* |
| 128-35 | Thai | 5/13 – 6/26 | 7.2 hrs | review and annotate six district court decisions and review and annotate *Kitchen* |

To remove these non-compensable time entries following oral argument and prior to the Tenth Circuit's decision in this case, the amount of Plaintiffs' appeal-related attorneys fees should be reduced by an additional $4,070.00. *See* Exhibit "A," p. 2, to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account, including dollar amounts).

On July 18, 2014, the Tenth Circuit Court of Appeals published its decision affirming the ruling of this Court on cross motions for summary judgment. Defendant Smith thereupon filed a Petition for Writ of Certiorari. *See* Appellate Docket Sheet, Exhibit "8." After reviewing the appellate decision and conferencing among themselves (*see* Holladay entries 244-47 and Thai entries 136-37), counsel for Plaintiffs Bishop and Barton all but switched sides, joined Defendant Smith, and filed a Response Brief *in support of certiorari*, duplicating Defendant Smith's efforts in this respect and concluding: "the petition for a writ of certiorari should be granted." Certiorari

---

[6]*See* Affidavit of Robert Sartin, ¶ 15, Exhibit "9."

Response Brief, p. 32, Exhibit "5." Clearly, Plaintiffs' counsel wanted to be part of history, even if it meant placing their appellate victory at risk, but none of the parties prevailed in their mutual quest for certiorari and therefore no prevailing party attorneys' fees may be awarded thereon.[7] Or, put another way, their response brief was duplicative and unnecessary in light of Defendant Smith's Petition for Certiorari (which had requested the same relief). Either way, the following time entries are non-compensable:

| Entries | Attorney | Dates | Hours | Description |
|---------|----------|-------|-------|-------------|
| 248-80 | Holladay | 8/10 – 8/25 | 27.6 hrs | work on brief supporting Def's Pet. for Cert. |
| 31-38 | Warner | 8/11 – 8/26 | 25.4 hrs | work on brief supporting Def's Pet. for Cert. |
| 138-81 | Thai | 7/23 – 8/26 | 78.5 hrs | work on brief supporting Def's Pet. for Cert. |

Plaintiffs did not prevail in their request for certiorari. The amount of Plaintiffs' appeal-related attorneys fees should be reduced by an additional $48,045.00 to account for such non-compensable time. *See* Exhibit "A," pp. 3-4, to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account, including dollar amounts).

As a matter of law, Plaintiffs' counsel may not be compensated for work done in connection with supporting amicus briefs. The Court in *Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003), denied recovery for attorney's fees and expenses for work done in connection with supporting amicus briefs, and in so doing stated: "An organization or group that files an amicus brief on the winning side is not entitled to attorney's fees and expenses as a prevailing party, because it is not a party. We will not allow that result to be changed by the simple expedient of having counsel for a party do some or all of the amicus work." Although time spent reading and responding to opposing amicus briefs is compensable (*see, e.g.*, Holladay entries 83 and 126, and Thai entry 33), Plaintiffs should be precluded from recovering any attorneys' fees

---

[7]*See* Affidavit of Robert Sartin, ¶ 16, Exhibit "9."

for time spent coordinating, assisting and drafting amicus briefs in support of their position.[8]  As

noted by the Eleventh Circuit Court of Appeals in *Glassroth*:

> It comes as no surprise to us that attorneys for parties solicit amicus briefs in support of their position, nor are we shocked that counsel for a party would have a hand in writing an amicus brief.  In fact, we suspect that amicus briefs are often used as a means of evading the page limitations on a party's briefs.  Even where such efforts are successful, however, they should not be underwritten by the other party. . . . To pay a party for such work would encourage the practice, which we are loathe to do. The district court should not award plaintiffs any attorney's fees or expenses for work done in connection with supporting amicus briefs.

*Glassroth*, 347 F.3d at 919 (citation omitted).   Accordingly, the following time entries are non-

compensable:

| Entries | Attorney | Dates | Hours | Description |
|---------|----------|-------|-------|-------------|
| 5-228 | Holladay | 1/15 – 4/13 | 89.6 hrs | coordinating, assisting and drafting amicus briefs in support of Plaintiffs' position |
| 4-7 | Warner | 2/3 – 3/4 | 5 hrs | coordinating, assisting and drafting amicus briefs in support of Plaintiffs' position |
| 4-100 | Thai | 1/23 – 3/26 | 25.6 hrs | coordinating, assisting and drafting amicus briefs in support of Plaintiffs' position |

The Plaintiffs' appeal-related attorneys fees should be reduced by an additional $42,975.00 to

account for non-compensable time spent coordinating, assisting and drafting amicus briefs in

support of their position.  *See* Exhibit "A," pp. 5-7, to the Affidavit of Robert Sartin, Exhibit "9"

(itemized entry-by-entry account, including dollar amounts).

Don Holladay prepared for and attended oral argument in this case.  *See* Holladay entries

234-37).   It was unnecessary and duplicative for attorneys Warner and Thai to travel to Denver

and attend oral argument;[9] Plaintiffs should not recover for such duplicative time.  "Counsel for

the prevailing party should make a good faith effort to exclude from a fee request hours that are

excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103

S.Ct. 1933, 76 L.Ed.2d 40 (1983).  *See also Gragert v. Lake*, 2014 WL 3828705 (W.D. Okla.

---

[8] *See* Affidavit of Robert Sartin, ¶ 17, Exhibit "9."

[9] *See* Affidavit of Robert Sartin, ¶ 18, Exhibit "9."

2014) (duplicative work is non compensable); and *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994) (upholding reduction of compensable hours based on "hours that were unnecessary, irrelevant and duplicative").  The following time entries are non-compensable:

| Entries | Attorney | Dates | Hours | Description |
|---------|----------|-------|-------|-------------|
| 18-21 | Warner | 4/16 – 4/17 | 8.5 hrs | travel to/from Denver and attend oral argument |
| 121-24 | Thai | 4/16 – 4/17 | 8.5 hrs | travel to/from Denver and attend oral argument |

The amount of Plaintiffs' appeal-related attorneys fees should be reduced by an additional $5,737.50 to account for such non-compensable time.  *See* Exhibit "A," p. 7, to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account, including dollar amounts).

Plaintiffs are not entitled to recover attorneys' fees for secretarial tasks.  *See Heavener v. Meyers*, 158 F.Supp.2d 1278, 1285 fn. 12 (E.D. Okla. 2001) (plaintiff not entitled to be compensated for secretarial functions under 42 U.S.C. § 1988).  Professor Thai's entries at 87 and 88 for converting and formatting the Response Brief and working on its table of contents and table of authorities is secretarial work and non-compensable.[10]  Accordingly, the amount of Plaintiffs' appeal-related attorneys fees should be reduced by an additional $5,800.00 to account for such non-compensable time.  *See* Exhibit "A," p. 8, to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account, including dollar amounts).

Don Holladay's travel to Denver on April 10, 2014, to attend oral argument in the *Kitchen* appeal was wholly unnecessary and is not the type of time normally billed to one's client.[11]  Tenth Circuit oral arguments are available on the Court's website within 24 hours of hearing (*see* Order, p. 4, Exhibit "6"), and if Mr. Holladay had desired to be privy to the oral argument in *Kitchen*, he could have simply downloaded the .mp3 file.[12]  Accordingly, the

---

[10]*See* Affidavit of Robert Sartin, ¶ 19, Exhibit "9."

[11]*See* Affidavit of Robert Sartin, ¶ 20, Exhibit "9."

[12]*See* http://www.uscourts.gov/courts/ca10/13-4178.mp3.

amount of Plaintiffs' appeal-related attorneys fees should be reduced by an additional $2,450.00 to account for such non-compensable time. *See* Exhibit "A," p. 8, to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account, including dollar amounts).

With respect to Mr. Holladay's travel to Denver for oral argument in this case, he should only bill 25% of his normal hourly rate since he has provided no evidence that he performed any substantive work while travelling.[13]  As noted by the Tenth Circuit Court of Appeals in *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (affirming award of travel time at 25% of standard hourly rate), "an attorney's [travel] time, while necessary, is essentially unproductive and, therefore, compensable at a reduced hourly rate."  Accordingly, the amount of Plaintiffs' appeal-related attorneys fees should be reduced by an additional $1,575.00 to account for such non-compensable time. *See* Exhibit "A," p. 8, to the Affidavit of Robert Sartin, Exhibit "9."

In summary, the following time is, as a matter of law, non-compensable and must be subtracted from the amount requested by Plaintiffs for appeal-related attorneys' fees:

| Amount | Non-compensable Time |
|---|---|
| $17,695.00 | work on cross-appellants' notice of appeal, principal brief and/or reply brief |
| $7,532.50 | work on cross-appellants' principal brief in time entries expressly billed for "principal and response" brief |
| $4,070.00 | reviewing district court decisions after the case was at issue following oral argument, prior to the Tenth Circuit's decision |
| $48,045.00 | research and write brief in support of Defendant Smith's Petition for Certiorari |
| $42,975.00 | coordinating, assisting and drafting amicus briefs in support of plaintiffs' position |
| $5,737.50 | unnecessary and duplicative travel to Denver by attorneys Warner and Thai to attend oral argument |
| $5,800.00 | secretarial work formatting brief and building table of contents and authorities |
| $2,450.00 | travel time to Denver to attend oral argument in *Kitchen v. Herbert* case |
| $1,575.00 | 75% reduction in Mr. Holladay's normal billing rate for time spent travelling |
| | |
| **$135,880.00** | **total non-compensable time** |

---

[13]*See* Affidavit of Robert Sartin, ¶ 21, Exhibit "9."

### III.
### Plaintiffs' Appeal-Related Expenses Should be Reduced,
### as a Matter of Law, by $1,263.86 in Non-compensable Expenses[14]

For the same reasons articulated in the preceding section with respect to non-compensable time, the following are non-compensable expenses:

| Amount | Non-compensable Expense |
|---|---|
| $279.47 | travel expenses to Denver for Mr. Holladay to attend oral argument in *Kitchen v. Herbert* case and for Mr. Warner to attend oral argument in this case |
| $409.57 | additional travel expenses in Denver for Mr. Holladay to attend oral argument in *Kitchen v. Herbert* case |
| $407.72 | hotel rooms in Denver for Mr. Warner and Mr. Thai to attend oral argument |
| $120.00 | additional travel expenses in Denver for Mr. Thai to attend oral argument |
| $47.10 | FedEx expense to file brief in support of Defendant Smith's Petition for Certiorari |
| | |
| **$1,263.86** | **total non-compensable expenses** |

### IV.
### Plaintiffs Have Failed to Exercise Sufficient "Billing Judgment"
### in Their Calculation and Plaintiffs' Appeal-Related Attorneys' Fees Should be
### Further Subject to a Substantial Reduction to Account for an Unreasonable Amount of Time

On January 16, 2014, Defendant Smith filed her Notice of Appeal, and three months later, the Tenth Circuit Court of Appeals heard oral argument. These three months (i.e, January 16, 2014 through April 17, 2014) constitute the sole time period for which Plaintiffs Bishop and Baldwin are entitled to recover *appeal-related* attorneys fees.

This Court must resist the temptation to understand Plaintiffs' Motion for Judgment on Amount of *Appeal-Related* Attorneys' Fees as pertaining to anything beyond these three months.

---

[14]*See* Exhibit "C" to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account).

The ten years Plaintiffs spent litigating these issues before this Court, *prior to appeal*, are not at issue herein, nor can they be.[15]

On remand "to determine an appropriate award amount," Plaintiffs have filed a Motion for Judgment on Amount of Appeal-Related Attorneys' Fees seeking $368,827.50 for three months of appellate work in which they had only limited success – only the Bishop and Baldwin Plaintiffs prevailed. Once the reductions identified in Section II above have been made based on express line items that reflect unlawful billings, Plaintiffs' remaining time records still reflect 613.2 hours and $224,607.50 for drafting one Response Brief and preparing for one 15 minute oral argument.[16] To the extent this amount of time and money is more than "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights [appeal]",[17] then it is exceeds the "reasonable fee" authorized by 42 U.S.C. § 1988(b) and needs to be trimmed.

The inequity of taxing local residents for a county officer's support, obedience and defense of the *State* Constitution is apparent on its face; while 42 U.S.C. § 1988(b) may require local taxpayers to answer for Plaintiffs' "reasonable attorneys' fee" on appeal, Tulsa County taxpayers should not be assessed one penny more than the law requires. Justice demands that

---

[15]*See* Fed. R. Civ. P. 54(d)(2).

[16]*See* Exhibit "B" to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account).

[17]*Perdue v. Kenny*, 559 U.S. 542, 552, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010) ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. If plaintiffs find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied. *A reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys. Section 1988's aim is to enforce the covered civil rights statutes, not to provide a form of economic relief to improve the financial lot of attorneys.*" (Ellipsis, brackets, internal quotation marks and citations omitted and emphasis added).

measures of length, weight or quantity, including Plaintiffs' lodestar calculation for recovery of

appeal-related attorneys' fees, be scientific, true and beyond contestation.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983),

the Supreme Court established that in fee shifting cases the basis of a fee award is the objective

"lodestar calculation" – the number of hours reasonably expended multiplied by the applicable

hourly market rate for legal services.

> [T]he lodestar looks to the prevailing market rates in the relevant community[, and] produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. . . . [A]nd unlike the *Johnson* approach,[18] *the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.*

*Perdue v. Kenny*, 559 U.S. 542, 551-52, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010) (internal

quotation marks, citations omitted and emphasis added).

As explained by the Tenth Circuit Court of Appeals in *Ramos v. Lamm*, 713 F.2d 546,

555 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council*

*For Clean Air*, 483 U.S. 711, 725 (1987):

> The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time.  If the lawyer seeking the fee is in private practice, his or her customary rate would be a relevant

---

[18]*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974), listed 12 factors that a court should consider in determining a reasonable fee.  "This method, however, 'gave very little actual guidance to district courts.  Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.'"  *Perdue v. Kenny*, 559 U.S. 542, 551-52, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010) (*quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)).  The twelve factors were: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Perdue*, 559 U.S. at 551, fn. 4.

but not conclusive factor.  The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation.  Lawyers working outside their fields of expertise may deserve an hourly fee lower than their normal billing rate because of their lack of experience in the civil rights field. . . . The quality of the lawyer's performance in the case should also be considered in placing a value on his or her services.

The hourly rate sought in this case by James Warner, $275.00 per hour, is admittedly the prevailing market rate; however, because neither he nor his partner, Don Holladay, have submitted proof of experience in the civil rights field, they may deserve a lower hourly rate.  The hourly rate sought in this case by Don Holladay, $350.00 per hour, is above the prevailing market rate, but based on his years of practice, his experience in analogous litigation and his performance in this case, Defendant agrees that $350.00 is a reasonable hourly rate for Don Holladay.  Additionally, based on his performance in this case, Defendant agrees that $275.00 is a reasonable hourly rate for James Warner.

Defendant believes that the $400.00 per hour rate sought in this case by Joseph Thai exceeds the prevailing market rate, and that his participation in this case was wholly unnecessary.[19]  Moreover, the use of Mr. Thai to write the appellate brief resulted in duplication of effort and the expenditure of time to familiarize himself with the law and facts already possessed by attorneys Holladay and Warner from litigating the case in district court. [20]

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should [then] exclude from this initial fee calculation hours that were not "reasonably expended."  Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

---

[19]*See* Affidavit of Robert Sartin, ¶¶ 7-9, Exhibit "9."

[20]*See* Affidavit of Robert Sartin, ¶ 8, Exhibit "9."

*Hensley*, 461 U.S. 433-34 (*quoting Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

As evidenced by the express line entries identified in Section II above, and as further detailed below, Plaintiffs' counsel has clearly failed to exercise appropriate "billing discretion" in this case. Plaintiffs claim they exercised billing discretion in not seeking attorneys' fees for the work that they did in the trial court. Plaintiffs' Motion, p. 16 (Dkt. #299). This, however, is not the exercise of billing discretion; rather, the time for requesting trial-related attorneys' fees has long since passed. Plaintiffs are time-barred from obtaining those fees.[21] When the deadline passed, discretion was extinguished.[22]

"[T]he district court must carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Ramos*, 713 F.2d at 555. "The burden is not for the court to justify each dollar or hour deducted from the total submitted;" rather, it remains the fee applicant's burden "to prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986). While a claimant's lodestar calculation is entitled to a

_____

[21]The time for requesting trial-related attorneys' fees expired 14 days after the entry of judgment. *See* Fed. R. Civ. P. 54(d)(2).

[22]Notably, the parties' filing of Notices of Appeal did not prevent Plaintiffs from filing, or deprive this Court of jurisdiction to consider, a motion for trial-related attorneys' fees. As the Tenth Circuit has stated: "A motion for attorney fees is considered collateral to and separate from the decision on the case's merits. While filing notice of appeal generally divests the district court of jurisdiction over the issues on appeal, . . . the district court retains jurisdiction over collateral matters not involved in the appeal. . . . Attorney's fees awards are collateral matters over which the district court retains jurisdiction." *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, No. CIV-09-460-RAW, 2011 WL 209164 (10th Cir. Jan. 21, 2011) (internal quotation marks and citations omitted).

presumption of reasonableness, *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998), the Tenth Circuit requires "meticulous, contemporaneous time records" and may substantially reduce or even deny a fee award in their absence. *Ramos*, 713 F.2d at 553. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

Because Plaintiffs' attorneys in this case provided pro bono representation, the normal market controls provided by client review of the billing records and by internal law firm control over the accuracy and reasonableness of time entries are not present in this case. Indeed, *none of the billing attorneys has testified that his time records were created contemporaneous with the work performed.*

The issues in this case are obviously important; but defending this Court's decision was not all that difficult. On appeal to the Tenth Circuit, there is generally less than a ten percent (10%) chance of reversal.[23] The parties' district court briefing on cross motions for summary judgment and this Court's 68-page Opinion and Order clearly informed and framed the issues for appeal. In addition, the ink was still drying on a floodgate of recently-decided federal court decisions[24] in favor of same sex marriage. *See U.S. v. Windsor*, 133 S.Ct. 2675, 2694, 186 L.Ed.2d 808 (U.S. June 26, 2013) (federal Defense of Marriage Act found unconstitutional under the Fifth Amendment); *Kitchen v. Herbert*, 961 F. Supp.2d 1181 (D. Utah Dec. 20, 2013) (Utah ban on same-sex marriage unconstitutional); *Bostic v. Rainey*, 970 F. Supp.2d 456 (E.D. Va. Feb.

---

[23]William M. Richman and William L. Reynolds, "Injustice On Appeal: The United States Courts of Appeals in Crisis," p. 188 (Oxford Univ. Press 2013) (citing a 6.8 percent district court reversal rate for the Tenth Circuit Court of Appeals in 2009).

[24]And through PACER, or a simple phone call, access to any of their accompanying motions and briefs. In fact, the issues raised in this case, as this Court has recognized, have already been considered by – and fully briefed before – the Supreme Court in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013). *See* Opinion and Order, pp. 7 & 57-58 (Dkt. #272). While standing deficiencies prevented the Supreme Court from resolving the substantive constitutional questions raised in *Hollingsworth*, the issues were fully briefed before the high court, so the Plaintiffs here had a model to follow on appeal.

13, 2014) (Virginia ban on same-sex marriage unconstitutional); and *Lee v. Orr*, No. 13-cv-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014) (Illinois ban on same-sex marriage unconstitutional).

As Plaintiffs themselves point out, "[s]ince *Windsor*, every federal court to have considered the issue . . . has concluded that states may no more deprive same-sex couples of marriage than they may deny interracial couples the exercise of that fundamental right;"[25] and while important, their case "is neither a complicated nor a difficult one."[26]

So, after the unlawful entries are removed (*see* Section II above), why do Plaintiffs' counsel still bill more than 600 hours for drafting a response brief and preparing for a 7½ minute oral argument (after all, half of the 15 minute oral argument was devoted to the non-prevailing cross-appellants).[27]   Non-contemporaneous time records certainly account for some of this discrepancy.  Additionally, as shown by the express line items identified in Section II above, Plaintiffs' counsel has not (contrary to the representations in Plaintiffs' Motion) completely excised all work performed on behalf of the non-prevailing Cross-Appellants Barton and Phillips.  If Plaintiffs' counsel overlooked line items expressly stating the work performed was drafting a Notice of Appeal (Warner 3) and drafting a Reply Brief (Thai 108), then undoubtedly entries that required closer scrutiny to identify clearly survived the purported purge.  The submitted time records contain vague entries and the occasional use of block billing

---

[25]Certiorari Response Brief, p. 12, Exhibit "5."

[26]Principal and Response Brief, p. 1, Exhibit "3."

[27]*See* http://www.uscourts.gov/courts/ca10/14-5003.mp3.

throughout,[28] but their constant compilation of hour upon hour of attorneys' time results not from protecting a district court decision on appeal, but rather, from seeking something more, something beyond the pale of recoverable attorneys' under 42 U.S.C. § 1988.

Plaintiffs' counsel, anxious to climb aboard the outbound train for fame and glory – a train that was driven by the *Windsor* locomotive, followed closely behind by *Kitchen*, *Bostic* and *Lee* – requested this Court to expeditiously rule on its pending motion for summary judgment[29] and joined Defendant Smith[30] in seeking and receiving an accelerated briefing schedule from the Tenth Circuit Court of Appeals to hopefully consolidate this appeal with the one in front of it, the appeal from Utah in *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), *cert. denied*, 135 S.Ct. 265 (Oct. 6, 2014).   Most of the work performed by Plaintiffs' counsel was not to protect its district court victory from being reversed on appeal, but rather to be worthy of argument before the United States Supreme Court.   This fact becomes crystal clear when counsel for Plaintiffs Bishop and Barton all but switched sides, joined Defendant Smith, and filed a Response Brief *in support of certiorari*, placing their appellate victory at risk for an opportunity to appear before the Supreme Court.   Plaintiffs' counsel was tasked with conquering the town, but instead, they sought to leave no brick standing.   They used a howitzer to kill a gnat.   To say they overshot the mark would be an understatement.   The citizens of Tulsa County are responsible for "a reasonable attorneys' fee," no more.

---

[28]*See, e.g., League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S. Forest Service,* 2014 WL 3546858, at *7 (D. Or. 2014) (reducing block-billed entries by 50%); *Marquez v. Harper Sch. Dist. No. 66*, 546 Fed. Appx. 659, 660 (9th Cir. 2013) (affirming 100% cut to same); *Safeworks LLC v. Teupen Am. LLC*, 2010 WL 3033711, *2 n.2 (W.D. Wash. 2010) (eliminating block-billed entries entirely); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (affirming 30% cut to same).

[29]*See* Plaintiffs' Request for Expeditious Ruling, Exhibit "1" (Dkt. 270).

[30]*See* Motion to Expedite Appeal, p. 3, Exhibit "2."

Defendant has enlisted the aid of Jandra S. Jorgenson, an expert in civil appellate work. After detailing the steps necessary to protect the victory won in this Court on appeal to the Tenth Circuit Court of Appeals, she testifies "that the time necessary for me and my co-counsel to perform the services described in (i)-(ix), above,[31] would have been four (4) attorney work-weeks of 40 billable hours per week, for a total of 160 hours. Multiplying those 160 hours by the claimed $400/hr. rate for Plaintiffs' counsel, results in a fee of $64,000."  She then details the work necessary to prepare for oral argument and concludes that "the time necessary to perform the services described in (x)-(xii), above,[32] including travel time to and from Denver, would have been two (2) attorney work-weeks of 40 billable hours. Multiplying those 80 hours by the claimed $400/hr. rate for Plaintiffs' counsel results in a fee of $32,000."  Ultimately, it is Ms. Jorgenson's opinion "that the total attorney fees reasonably awardable to Plaintiffs' counsel for the services they rendered in defense of Bishop's and Baldwin's prevailing party claims is $96,000." [33]  In like manner, Robert Sartin, shareholder with Barrow & Grimm, P.C., concludes "that the total amount billed for all work required to be done in this case to protect on appeal the victory won before this Court by Plaintiffs Bishop and Baldwin, consisting primarily of one Response Brief and one Oral Argument, should not exceed $100,000.00.  Generally speaking, to the extent Plaintiffs' counsel have billed more than $100,000.00 in attorneys' fees for such work, their appeal-related billings are to that extent unreasonable and excessive."[34]

Granting Plaintiffs' counsel $100,000.00 for drafting a response brief and preparing for a 7½ minute oral argument in this case is more than generous, and would be "sufficient to induce a

---

[31]*See* Affidavit of Jandra S. Jorgenson, ¶ 9 (itemizes steps i through ix), Exhibit "10."

[32]*See* Affidavit of Jandra S. Jorgenson, ¶ 9 (itemizes steps x through xii), Exhibit "10."

[33]*See* Affidavit of Jandra S. Jorgenson, ¶ 9, Exhibit "10."

[34]*See* Affidavit of Robert Sartin, ¶ 7, Exhibit "9."

capable attorney to undertake the representation of [this] meritorious civil rights [appeal]." *Perdue*, 559 U.S. at 552. Consequently, it is a reasonable attorneys' fee. *Id*. To this should be added Plaintiffs' counsel's time for the actual oral argument and for working on Plaintiffs' application for attorneys' fees, another $8,475.00. *See* Exhibit "B," p. 6, to the Affidavit of Robert Sartin, Exhibit "9" (itemized entry-by-entry account, including dollar amounts). Judgment should be entered on Plaintiffs' Motion for Judgment on Amount of Appeal-Related Attorneys' Fees in the amount of $108,475.00.

Comparable awards for appeal-related attorneys' fees in other cases corroborate the testimony of Robert Sartin and Jandra S. Jorgenson above. *See, e.g.*, *American Civil Liberties Union of Kentucky v. McCreary County, Kentucky*, 2009 WL 720904, *2 (E.D. Ky. 2009) (68 hours expended in researching and writing 52-page brief was reasonable); *Brady v. Wal-Mart Stores, Inc.*, 2010 WL 4392566, *8 (E.D.N.Y. 2010) (appeal-related attorneys' fees reduced to 62.5 hours for researching and writing principal and reply brief); *In re Reid*, 399 B.R. 307, 309 (Bankr.W.D. Ky. 2008) (appeal-related attorneys' fees reduced to 30 hours for researching and writing principal and reply brief); *Critchlow v. First Unum Life Ins. Co. of America*, 377 F.Supp.2d 337, 343 (W.D.N.Y. 2005) ($15,504.38 awarded for appeal-related attorneys' fees); and *Board of Trustees of Hotel and Restaurant Employees Local 25 v. Madison Hotel, Inc.*, 43 F.Supp.2d 8 (D. D.C. 1999) ($188,598.75 was a reasonable attorneys' fee for *all the work* performed in the district court, then on appeal and then again before the district court on motion for summary judgment after remand).

On the other hand, the five cases cited by Plaintiffs actually support Defendant Smith because the awards for attorneys' fees therein were based on trial work, not researching and writing a brief on appeal. *See* Plaintiffs' Motion, p. 24 (Dkt. #299).

V.

<u>An Enhancement Of The Lodestar Is Not Warranted</u>

After explaining the objective nature of the lodestar calculation which "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results," and explaining that "[a] reasonable attorney's fee is one that is adequate to attract competent counsel," the Supreme Court in *Perdue v. Kenny* addressed the "rare" and "exceptional" circumstances under which a lodestar calculation may be enhanced.  *Perdue*, 559 U.S. at 552 (2010).

> [T]he lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and … *an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation*.  We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are  fully reflected in the number of billable hours recorded by counsel.  We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.

*Perdue*, 559 U.S. at 553 (brackets, internal quotation marks and citations omitted and emphasis added).

The Supreme Court has stated on several occasions that most of the *Johnson* factors are reflected in the lodestar and should not be the basis of an upward adjustment in attorneys' fees. *See, e.g., Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); and *Blum v. Stenson*, 465 U.S. 886, 898–900, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

In those "rare" and "exceptional" circumstances under which a lodestar calculation may be enhanced, an enhancement may be appropriate where "the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar) or perhaps only a few similar factors."  *Perdue*, 559 U.S. at 555.  This is not such a case because no formula is being used to determine the hourly rate.  "[A]n enhancement may [also] be

20

appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Id*. Such is not the case in this appeal, which lasted 3 months and cost less than $1,000 in expenses. An enhancement may also be warranted if "an attorney's performance involves exceptional delay in the payment of fees." Again, this is not that case; at this present time, not even one year has passed since the appeal was filed. These were the only three "rare" and "exceptional" circumstances identified by the Court in *Perdue* in which superior attorney performance could possibly justify an enhancement.

"[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant." *Perdue*, 559 U.S. at 553. "[A] fee applicant seeking an enhancement must produce "specific evidence" that supports the award. An enhancement must be based on evidence that enhancement was necessary to provide fair and reasonable compensation. This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal." *Id*. (parentheses, internal quotation marks and citations omitted). If an enhancement is granted, it must be accompanied by "detailed findings as to why the lodestar amount was unreasonable, and in particular, as to why the quality of representation was not reflected in the [lodestar]." *Blum*, 465 U.S. at 900. In *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court held that risk or contingency of non-recovery is not a basis for an upward enhancement.

Simply put, no enhancement is justified in this accelerated appeal. Plaintiffs advised the Tenth Circuit Court of Appeals that this case was neither complicated nor difficult. *See* Principal and Response Brief, p. 1, Exhibit "3." At the time of their appeal, they were riding the waves unleashed by a floodgate of recently-decided federal court decisions in favor of same-sex marriage. Recovery is sought for only 3 months of appeal-realted attorneys' fees: just one brief and a meager 7½ minute oral argument. This Court must resist the temptation to understand

Plaintiffs' Motion for Judgment on Amount of *Appeal-Related* Attorneys' Fees as pertaining to anything beyond these three months. The ten years Plaintiffs spent litigating these issues before this Court, *prior to appeal*, are not at issue.

The Court in *Perdue* specifically warned that enhancements should not be based on "a judge's subjective opinion regarding particular attorneys *or the importance of the case*." *Perdue*, 559 U.S. at 558 (emphasis added). The Supreme Court in *Perdue* concluded its opinion by cautioning judges:

> Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights. But unjustified enhancements that serve only to enrich attorneys are not consistent with the statute's aim. In many cases, attorney's fees awarded under § 1988 are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based. Instead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services.

*Perdue*, 559 U.S. at 559.

## VI.
## Conclusion

WHEREFORE, Defendant respectfully requests that the amount of Plaintiffs' appeal-related attorneys' fees be reduced by $135,880.00 in non-compensable time, by an additional $1,263.86 in non-compensable expenses and be reduced by an additional $123,208.64 in unreasonable and excessive time, and judgment entered on Plaintiffs' Motion in the amount of $108,475.00 in recoverable *appeal-related* attorneys' fees.

Respectfully submitted,

/s/ John David Luton
John David Luton, OBA No. 11669
Assistant District Attorney
Tulsa County District Attorney's Office
500 S. Denver, Suite 900
Tulsa, OK 74103
(918) 596-4814 phone
 (918) 596-4804 fax
jluton@tulsacounty.org

ATTORNEY FOR DEFENDANT SALLY HOWE
SMITH, in her official capacity as Court Clerk of
Tulsa County, State of Oklahoma

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2015, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Don G. Holladay            dholladay@holladaychilton.com
Joseph T. Thai             thai@post.harvard.edu
Phillip Craig Bailey       craigbailey1@cox.net
Timothy P. Studebaker      tim@studebakerworleylaw.net
James E. Warner, III       jwarner@holladaychilton.com

/s/ John David Luton
John David Luton