## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| MARY BISHOP, | ) | |
| SHARON BALDWIN, | ) | |
| SUSAN BARTON, and | ) | |
| GAY PHILLIPS, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | No. 04-CV-848-TCK-TLW |
|  | ) | |
| SALLY HOWE SMITH, in her official | ) | |
| capacity as Court Clerk for Tulsa County, | ) | |
| State of Oklahoma, *et al.* | ) | |
|  | ) | |
| Defendants, | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| BIPARTISAN LEGAL ADVISORY | ) | |
| GROUP OF THE U.S. HOUSE OF | ) | |
| REPRESENTATIVES, | ) | |
|  | ) | |
| Intervenor-Defendant. | ) | |

### OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Judgment on Amount of Appeal-Related Attorneys'

Fees (Doc. 299). Plaintiffs request $368,827.50 in attorneys' fees, $1,942.37 in costs, and any

enhancement of the fee award deemed reasonable by the Court. For reasons set forth below, the

motion is granted in the amount of $298,742.77, which includes $296,847.50 in attorneys' fees and

$1,895.27 in costs.

## I.    Factual Background[1]

Plaintiffs Mary Bishop and Sharon Baldwin, an unmarried same-sex couple, challenged

Oklahoma's constitutional amendment defining marriage as between one man and one woman.

Plaintiffs Susan Barton and Gay Phillips, a same-sex couple legally married in California, challenged

Oklahoma's constitutional provision preventing recognition of same-sex marriages performed in

other states.  This Court held that the definitional provision violated the Equal Protection Clause of

the Fourteenth Amendment of the U.S. Constitution and permanently enjoined its enforcement.  This

Court further held that Plaintiffs Barton and Phillips lacked standing to challenge the non-recognition

provision.  Plaintiffs' trial counsel, Don Holladay ("Holladay") and James Warner ("Warner"), both

of the Oklahoma City law firm of Holladay & Chilton, provided their services *pro bono* and did not

seek fees for time spent obtaining this Court's judgment.  Beginning in 2010, Defendant Sally Howe

Smith ("Defendant") received *pro bono* representation from an Arizona-based advocacy group

known as Alliance Defending Freedom ("ADF"),[2] in addition to her representation by the Tulsa

County District Attorney's Office.

Represented by four attorneys, three from ADF and one from the Tulsa County District

Attorney's Office, Defendant appealed the Court's ruling regarding the definitional provision to the

United States Court of Appeals for the Tenth Circuit.  Plaintiffs Barton and Phillips cross-appealed

the Court's ruling on standing, urging the court to reach the merits of their challenge to the non-

---

[1]  This Order assumes familiarity with this Court's ruling in *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014), and the Tenth Circuit's ruling in *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014).

[2]  According to its website, ADF is a 501(c)(3) nonprofit organization that advocates for the right of people to freely live out their faith.

2

recognition provision.  Joseph Thai ("Thai"), a professor at the University of Oklahoma College of Law, joined Plaintiffs' legal team to assist with the appeal.  The appeal was not consolidated with *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) ("*Kitchen*"), a case pending before the Tenth Circuit presenting the similar issue of whether Utah's same-sex marriage ban violated the U.S. Constitution.  However, the case was assigned to the same three-judge panel and placed on an expedited schedule slightly behind *Kitchen*.  Plaintiffs filed two briefs in the Tenth Circuit – Appellees' Principal and Response Brief (Ex. 1 to Resp. to Mot. for Fees) and Appellees' Reply Brief (Ex. 2 to Resp. to Mot. for Fees).  Plaintiffs also presented an oral argument.

On July 18, 2014, the Tenth Circuit affirmed this Court's judgment as to the definitional provision but did so on alternative grounds.[3]  With respect to the non-recognition provision, the Tenth Circuit affirmed the Court's ruling that Barton and Phillips lacked standing.  Defendant filed a Petition for Writ of Certiorari in the United States Supreme Court, requesting that the Supreme Court review the Tenth Circuit's ruling in favor of Bishop and Baldwin regarding the definitional provision.  Plaintiffs Bishop and Baldwin filed a Brief for Respondents in the Supreme Court (Ex. 5 to Resp. to Mot. for Fees), which supported Defendant's Petition for Writ of Certiorari.[4]

---

[3]  The Tenth Circuit held that such provision burdened a substantive due process right – namely, the fundamental right to marry – and could not pass strict scrutiny.  *See Bishop*, 760 F.3d at 1079-82.  In contrast, this Court held that the provision drew a classification among groups of Oklahoma citizens that could not pass even the minimal level of scrutiny applicable to such classification, in violation of equal protection rights.  *See Bishop*, 962 F. Supp. 2d at 1295.  Although both holdings are grounded in Fourteenth Amendment protections, they represent two different constitutional paths to the same end point.

[4]  Jeffrey S. Fisher ("Fisher"), of the Stanford Law School Supreme Court Litigation Clinic, assisted Plaintiffs with this brief.  Due to the Stanford Supreme Court Litigation Clinic's non-compensation policy, Plaintiffs do not seek fees for Fisher's time.

The Supreme Court denied certiorari on October 6, 2014, and Plaintiffs filed a motion in the Tenth Circuit requesting appeal-related fees. The Tenth Circuit granted the motion in part, holding that Bishop and Baldwin were prevailing parties and remanding to this Court for determination of an appropriate fee award. The Tenth Circuit held that Barton and Phillips were not prevailing parties and could not recover their attorneys' fees. On December 5, 2014, Bishop and Baldwin ("Prevailing Plaintiffs") filed the motion before this Court seeking appeal-related attorneys' fees.

## II.     Fee Awards Under 42 U.S.C. § 1988

Congress passed the Civil Rights Attorneys' Fee Awards Act of 1976 ("Act") in order to ensure access to the judicial process, recognizing that a "civil rights litigant acts as a 'private attorney general' who furthers important national policy objectives." *Cooper v. Singer*, 719 F.2d 1496, 1498 (10th Cir. 1983), *overruled on other grounds by Venegas v. Mitchell*, 495 U.S. 82, 90 (1990). The Act provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988(b). By Order of the Tenth Circuit, Bishop and Baldwin are prevailing parties entitled to fees under this statute. This Court's only task is to determine what fee is reasonable.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation, known as the lodestar, provides "an objective basis on which to make an initial estimate of the value of the lawyer's services." *Id.*; *see Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995) ("To determine a reasonable attorneys fee, the

4

district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate."). The lodestar method is intended to produce an award "that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The party seeking fees bears the burden of proving "the reasonableness of each dollar, each hour, above zero," *Bangerter*, 61 F.3d at 1510, and courts must endeavor to exclude from the calculation any hours that are "excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434. Time records submitted in support of a fee request must reflect the same billing judgment as a bill to a paying client. *See id.* ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.").

In calculating the lodestar and determining a reasonable fee, a court should not consider whether the award will be paid from private or public funds. *See Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725 (1987). The Tenth Circuit explained:

> When Congress enacted the attorney's fee statute, it chose to award fees against governmental entities. Many civil rights actions are brought pursuant to 42 U.S.C. § 1983. Violations of this statute require action under color of state law; thus, a governmental entity will often be responsible for the payment of the fee. Reducing the potential award for a large group of defendants would counteract the congressional intent to induce civil rights enforcement in the same way reducing the awards for certain types of plaintiff's lawyers would frustrate that intent. We hold, therefore, that attorney's fees awarded against governmental units should be calculated in the same manner as those awarded against private parties.

*Id.*. Thus, a court may not reduce an otherwise reasonable fee award simply because taxpayers will pay the bill.

### III.    Prevailing Plaintiffs' Proposed Lodestar Calculation and Defendant's Objections

Prevailing Plaintiffs' proposed lodestar fee calculation, in the total amount of $368,827.50,

consists of: (1) Holladay - 478.4 hours at $350.00/hour; (2) Warner - 108.9 hours at $275.00/hour;

and (3) Thai - 428.6 hours at $400.00/hour.  Holladay served as lead appellate counsel and had

> specific responsibility for the presentation of oral arguments before the Tenth Circuit;
> for coordination of information concerning the amici filing organizations; for review
> of all amici filings to extract specialized information that would be useful in the
> arguments to be presented, or which might require response and rebuttal.

(Holladay Decl. ¶ 12, Ex. 2 to Mot. for Fees.)  Thai took primary responsibility for "strategizing,

researching, and drafting" all briefs and preparing Holladay for oral argument.  (Thai Decl. ¶ 11, Ex.

4 to Mot. for Fees.)  Warner's primary roles were providing research and editing assistance to Thai

and drafting the motion for appeal-related fees.  (Warner Decl., Ex. 3 to Mot. for Fees, at Ex. A.)

In addition to the declarations of Holladay, Warner, and Thai, Prevailing Plaintiffs submitted the

declarations of Oklahoma attorneys Michael Salem ("Salem") and Jimmy Goodman in support of

the reasonableness of their time and hourly rates.  In addition to attorneys' fees, Prevailing Plaintiffs

seek $1,942.37 in costs.

Defendant objects to $259,088.64 of Prevailing Plaintiffs' lodestar calculation and moves

the Court to enter judgment in the reduced amount of $108,475.00.  Defendant's objection is

supported by the affidavits of Oklahoma attorneys Robert Sartin ("Sartin") and Jandra Jorgenson

("Jorgensen").  Defendant raises several objections to the proposed calculation.  First, Defendant

objects to "non-compensable" time, *i.e.*, time spent on tasks that may not be shifted to Defendant

under the Tenth Circuit's ruling and/or the Act.  This category of objections is summarized in

Exhibit A to Sartin's affidavit.  Second, Defendant objects to time spent without the proper exercise

of "billing judgment," *i.e.*, excessive or duplicative time spent on otherwise compensable tasks.  This

category of objections is summarized in Exhibit B to Sartin's affidavit.  Finally, Defendant objects to Thai's hourly rate.

## IV.    Court's Rulings on Objections and Calculation of Lodestar

### A.    Objection 1:  Non-Compensable Tasks

Defendant argues that $135,880.00 of the requested fee award was spent on wholly or partially non-compensable tasks and that $1,263.86 of the requested cost award is associated with such tasks.  The Court has divided the allegedly non-compensable tasks into eight categories.

#### 1.    Time Spent on Cross-Appeal

The Tenth Circuit held that Barton and Phillips were not prevailing parties on their cross-appeal.  Prevailing Plaintiffs' counsel declared that they did not request fees for time spent on the cross-appeal, in accordance with the Tenth Circuit's directive.[5]  Defendant argues, however, that counsel failed to exclude time spent on portions of Appellees' Principal and Response Brief and Appellees' Reply Brief relating to the cross-appeal.

Specifically, Defendant seeks exclusion of one time entry related to Appellees' Principal and Response Brief because it uses the phrase "[r]eview draft brief in *principal*" (Holladay 180 (emphasis added)),[6] arguing that this language indicates that all time must have been spent on the cross-appeal.  Defendant also seeks a fifty-percent reduction of several other entries referencing both "principal" and "response" in the description  (Holladay 155; Warner 6, 10, 11, 12, 14, 15; Thai 84), arguing that use of both words indicates that counsel spent a portion of the billed time on the cross-

---

[5]  In their reply brief, Prevailing Plaintiffs conceded that they inadvertently included one time entry related to the cross-appeal, which totaled $55.00.

[6]  "Holladay 180" refers to the timekeeper and numbered entry, as listed on the attachments to the declarations of Holladay, Warner, and Thai.

appeal.  Defendant does not seek exclusion or reduction of time entries that exclusively reference the "response" brief, presumably because such language indicates that all time was spent responding to Defendant's arguments rather than prosecuting the cross-appeal.  (*See, e.g.*, Thai 80-82.)

The Court finds no basis for excluding or reducing a time entry simply because it references "principal" as well as "response" brief.  Appellees' Principal and Response Brief, which was titled and submitted in accordance with Federal Rule of Appellate Procedure 28.1(c)(2), contains eighty pages of substantive briefing.  Sixty-seven pages defend this Court's ruling as to the definitional provision, and the remaining thirteen challenge this Court's ruling as to the non-recognition provision.  The appellate rule requires submission of a combined brief, and the majority of such brief relates to the definitional provision.  Therefore, a time entry's inclusion of both phrases does not logically or necessarily indicate that some or any percentage of the billed time was spent on the last sixteen pages.  Even if some reduction was warranted, it would not be a 50% reduction.  It would be closer to a 15% reduction given the proportion of the brief actually devoted to the cross-appeal. Based on Prevailing Plaintiffs' counsels' testimony that they did not include time spent on the cross-appeal and the small percentage of the brief devoted to the cross appeal, the Court will not exclude or reduce the following time entries: Holladay 155, 180; Warner 6, 10, 11, 12, 14, 15; Thai 84.

Appellees' Reply Brief contains sixteen pages of substantive briefing.  The first six are devoted exclusively to defending the Court's judgment.  Pages seven through ten discuss standing issues that are relevant only to the cross-appeal – namely, whether the Tenth Circuit's prior ruling on standing precluded this Court's finding that Defendant lacked an enforcement connection to the non-recognition provision.  Pages ten through sixteen discuss issues relevant to both the appeal and cross-appeal – namely, Plaintiffs' failure to challenge statutory same-sex marriage bans and the issue

of severability.  Despite this breakdown, Defendant seeks exclusion of all time spent preparing the reply.

Even cursory review of Appellees' Reply Brief reveals its dual goals of defending the appeal and prosecuting the cross-appeal.  Although three pages relate exclusively to the cross-appeal, Prevailing Plaintiffs' counsels' hours already reflect deductions for that time.  For example, Thai 106 states: "Review and annotate appellant's response brief.  Outline replies to points in response brief.  Outline points for reply brief (excluding non-recognition)."  (Thai Decl., Ex. 4 to Mot. for Fees, at Ex. A.)  Based on Prevailing Plaintiffs' counsels' testimony that they did not include time spent exclusively on the cross-appeal and the small percentage of the brief devoted exclusively to the cross-appeal, the Court will not exclude or reduce the following time entries identified by Defendant: Holladay 209, 214, 215, 216; Thai 106-114.

### 2.      Time Spent After Oral Argument

Prevailing Plaintiffs stayed current on legal developments following oral argument but prior to the Tenth Circuit's written decision.  For example, Thai billed for review of six district court decisions ruling upon challenges to other states' same-sex marriage bans.  Holladay and Thai both billed for review and analysis of the Tenth Circuit's decision in *Kitchen*, which was issued after oral argument but before the Tenth Circuit's decision in this case.  Defendant contends that, following oral argument, any "further research and review of district court decisions is simply irrelevant and unnecessary."  (Sartin Aff. ¶ 15, Ex. 9 to Resp. to Mot. for Fees.)

Following oral argument, several district courts issued decisions on state same-sex marriage bans.  Staying abreast of these decisions, either for purposes of filing a notice of supplemental authority or being prepared for further appellate proceedings, was a reasonable expenditure of

attorney time.  Counsel for Defendant certainly spent time on similar tasks, as it filed its own post-argument notice of supplemental authority.  Private attorneys would not hesitate to bill clients for review of directly relevant case law issued after oral argument but before an appellate decision, and the Court finds no reason to exclude this time.  *See Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (rejecting argument that post-argument time should be excluded from appellate counsel's fee award) ("As for the State's objection to any post-argument time, a case does not necessarily stop dead between argument and decision.  Lawyers may need to consider subsequent authorities . . . , respond to inquiries from their clients, prepare for what they will need to do after the decision, and so forth.").  Therefore, the Court will not exclude or reduce the following time entries identified by Defendant: Holladay 238-243; Thai 128-135.

### 3.    Time Spent on Supreme Court Brief

Defendant seeks to exclude all time spent drafting the brief filed in the Supreme Court joining Defendant's Petition for Writ of Certiorari and requests a $48,045.00 reduction of the fee award.  Defendant essentially raises two arguments: (1) the time should be excluded because Prevailing Plaintiffs' request was unreasonable, unnecessary, and duplicative; and (2) the time should be excluded because the brief was unsuccessful and did nothing to contribute to Prevailing Plaintiffs' victory.  (Mot. for Fees 6 ("None of the parties prevailed in their mutual quest for certiorari and therefore no . . . fees may be awarded thereon.  Or, put another way, their response brief was duplicative and unnecessary . . . .").)  Prevailing Plaintiffs responded to the "reasonableness" argument, asserting that joining Defendant's petition was reasonable because Prevailing Plaintiffs would continue to suffer inequality without a "national-level decision affirming their right to marry."  (Reply in Support of Mot. for Fees 7 ("Supporting certiorari was not a light

decision for Plaintiffs to direct counsel to take, but certainly a reasonable one.").) Prevailing Plaintiffs did not address the "lack of success" argument, and neither party cited case law in support of their positions.

### a. Reasonableness of Decision to Join Petition for Writ of Certiorari

The Court finds Prevailing Plaintiffs' actions in seeking certiorari entirely reasonable. Prevailing Plaintiffs speculated, as did many constitutional scholars, that the Supreme Court would grant certiorari. Rightfully, Prevailing Plaintiffs sought to "secure a seat at the table" of this landmark litigation. (Reply in Support of Mot. for Fees 7 n.13.) Further evidencing the reasonableness of the decision, the successful plaintiffs in each of the other six cases pending on certiorari also supported the losing parties' petitions for certiorari. *See* Amy Howe, *Today's Orders: Same-Sex Marriage Petitions Denied*, SCOTUSblog (Oct. 6, 2014), at http://www.scotusblog.com/2104/10/todays-orders-same-sex-marriage-petitions-denied (linking to petitions and responses). Therefore, the Court rejects Defendant's contention that Prevailing Plaintiffs' counsel unreasonably expended this time or acted with some selfish or untoward purpose in seeking certiorari. (*See* Resp. to Mot. for Fees 6, 17 (stating that Prevailing Plaintiffs and their counsel supported Supreme Court review in order to "be part of history" and "climb aboard the outbound train for fame and glory").)

### b. Brief's Lack of Success

Prevailing Plaintiffs obtained a significant victory at the Tenth Circuit. However, as explained above, they desired a "national-level decision" and were willing to risk that victory in hope of obtaining Supreme Court review. In this particular aspect of their advocacy, they failed because the Supreme Court denied certiorari. The brief's lack of success – *i.e.*, the Supreme Court's failure

11

to accept certiorari – led to Bishop and Baldwin's immediate status as prevailing parties in the Tenth Circuit and their ability to recover fees under § 1988.  The issue is whether time spent preparing an unsuccessful brief advocating for Supreme Court review by a party who achieved a total victory at the circuit level may be included in an appeal-related fee award under 42 U.S.C. § 1988, where the decision to seek certiorari was reasonably made.[7]

Due to the absence of controlling law on this specific issue, the Court consulted general rules regarding fee awards for unsuccessful claims and unsuccessful motions.  With respect to unsuccessful claims, courts generally exclude time if the claims are "unrelated to the claims on which [the party] succeeded."  *See Hensley*, 461 U.S. at 434-35 (explaining that "a plaintiff may present in one lawsuit distinctly different claims for relief" and that "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved") (internal quotations omitted).  Courts may also reduce the overall lodestar calculation where a plaintiff has "achieved only partial or limited success" because "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Id.* at 436.  Time may be excluded even where the unsuccessful claims or theories "are interrelated, non-frivolous, and raised in good faith."  *Id.* (explaining that the "most critical factor is the degree of success obtained").  There is no precise formula for these types of "limited success" exclusions, and district courts have wide discretion in reaching an equitable reduction of the lodestar calculation.  *Id.*  ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

_____

[7]  The only issue for which the parties jointly sought Supreme Court review was the constitutionality of the definitional provision.  On this issue, Prevailing Parties achieved a total victory.

With respect to unsuccessful motions filed prior to judgment, courts generally include such time in a fee award.  The Ninth Circuit has explained:

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The County would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.

*Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir.1991); *see also DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003) ("[A] party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim."); *Latta v. Otter*, No. 1:13-CV-482, 2014 WL 7245631, at *7 (D. Idaho Dec. 19, 2014)  (awarding fees for time spent on unsuccessful opposition to the State of Idaho's motion to intervene due to overall success of challenge to Idaho's same-sex marriage ban).  Within the Tenth Circuit, district courts have "discretion to strike hours spent on unsuccessful motions from the lodestar calculations," *see Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *7 (D. Kan. Nov. 29, 2012), but generally do so only if the motion was frivolous or caused by counsel's own conduct, *see Lintz v. Am. Gen. Fin., Inc.*, 87 F. Supp. 2d 1161, 1166 (D. Kan. 2000) (denying fee request for unsuccessful motions to compel that were caused by counsel's failure to engage in good faith efforts to resolve dispute).[8]

Prevailing Plaintiffs' request for acceptance of certiorari does not fit neatly into the category of an unsuccessful, unrelated claim because Prevailing Plaintiffs were seeking Supreme Court affirmance of an identical claim they successfully asserted at the circuit level.  Thus, it is not subject to clear exclusion under the "unrelated, unsuccessful claim" principles.  It also does not fit neatly

---

[8]  For reasons explained above, Prevailing Plaintiffs' request for certiorari was not frivolous.  Nor was it caused by counsel's selfish or unreasonable conduct.

into the category of an unsuccessful battle on the path to victory.  Victory had already been achieved on the definitional provision – the only issue for which the parties sought Supreme Court review.  Thus, it is not subject to clear inclusion under the "reasonable but unsuccessful motion prior to judgment" principles.

The Court concludes that time spent requesting Supreme Court review by a successful party at the circuit level falls into a gray area where a court has a substantial amount of equitable discretion.  Exercising such discretion, the Court excludes time spent by Prevailing Plaintiffs seeking certiorari.  Although not a perfect fit, Prevailing Plaintiffs' unsuccessful request for certiorari is most analogous to an instance of "limited success" for which a deduction is appropriate.  The request, while reasonable, was a failed attempt to achieve a bigger and better victory.  Prevailing Plaintiffs had substantial success before the Tenth Circuit, but they had no success before the Supreme Court.  Bishop and Baldwin became prevailing parties entitled to appeal-related fees *despite* their Supreme Court advocacy rather than *because* of it.[9]  As a policy matter, it makes little sense to shift fees because Defendant would essentially be double-billed for a wholly unsuccessful effort by both parties.  Had Prevailing Plaintiffs successfully resisted Supreme Court review of the Tenth Circuit's decision in their favor, they would have a better case for shifting fees.  However, a failed attempt to re-litigate a victory before a higher tribunal, with hope of obtaining something better but also risking total reversal, is far afield from an unsuccessful motion filed along the path to victory.  Therefore,

---

[9]  Had the Supreme Court granted certiorari, the Tenth Circuit's Order directing this Court to award fees would not exist.  Although the Tenth Circuit may have awarded fees in the future if Prevailing Parties succeeded before the Supreme Court, that is not what occurred in this case.  Therefore, this order does not reach the question of whether time spent seeking certiorari would be compensable if Prevailing Plaintiffs had ultimately prevailed before the Supreme Court.

14

in an exercise of its discretion, the Court declines to award fees for time spent on the Supreme Court

brief and will exclude the following time entries totaling $48,045.00: Holladay 248-280; Warner 31-

38; Thai 138, 139, 143, 144-181.  The Court will also exclude corresponding costs in the amount of

$47.10.

### 4.       Time Spent in Connection with Supporting Amicus Briefs

Defendant seeks to exclude all time spent by Prevailing Plaintiffs in connection with

supporting amicus briefs and requests a $42,975.00 reduction of the fee award.  The parties dispute

whether and to what extent this time may be included in a fee award.  The only circuit court to

address this issue prohibited the district court from awarding fees to prevailing parties "for time their

counsel spent in connection with amicus briefs supporting their position."  *Glassroth v. Moore*, 347

F.3d 916, 918 (11th Cir. 2003).  Specific examples provided by the *Glassroth* court of non-

compensable time include "enlisting various organizations to appear as amici; suggesting potential

signatories for the briefs; working on, supervising, and reviewing the amicus briefs; and seeing that

they were mailed on time."  *Id.* at 919.  The court reasoned:

> It comes as no surprise to us that attorneys for parties solicit amicus briefs in support
> of their position, nor are we shocked that counsel for a party would have a hand in
> writing an amicus brief. In fact, we suspect that amicus briefs are often used as a
> means of evading the page limitations on a party's briefs. *See Voices for Choices v.
> Illinois Bell Tel. Co.*, 339 F.3d 542, 544 (7th Cir. 2003) (Posner, J., in chambers)
> ("[A]micus briefs, often solicited by parties, may be used to make an end run around
> court-imposed limitations on the length of parties' briefs."). Even where such efforts
> are successful, however, they should not be underwritten by the other party. An
> organization or group that files an amicus brief on the winning side is not entitled to
> attorney's fees and expenses as a prevailing party, because it is not a party. We will
> not allow that result to be changed by the simple expedient of having counsel for a
> party do some or all of the amicus work. To pay a party for such work would
> encourage the practice, which we are loathe to do. *The district court should not
> award plaintiffs any attorney's fees or expenses for work done in connection with
> supporting amicus briefs.* (A reasonable amount of time spent reading and
> responding to opposing amicus briefs is, of course, compensable.)

*Id.* (emphasis added).[10]

If and to the extent *Glassroth* creates a bright-line rule excluding all time spent on activities "in connection with" supporting amicus briefs, the Court rejects *Glassroth*. The *Glassroth* court cited a decision authored by Judge Richard Posner, *Voices for Choices v. Illinois Bell Telephone Company*, 339 F.3d 542, 544 (7th Cir. 2003), in which the court denied motions for leave to file amicus briefs. Judge Posner is known as a "a particularly prominent critic" of amicus briefs advocating for one party, which have been termed "friend of a party" briefs. *See* Helen A. Anderson, *Frenemies of the Court: The Many Faces of Amicus Curiae*, 49 U. Rich. L. Rev. 361, 364, 396 (2015) (explaining various types of amicus briefs and Judge Posner's hostility toward "friend of a party" briefs). The Court does not share this hostility, and it does not appear to be a majority position. *See id.* at 415 (concluding that "on the whole, judges – even those with the greatest number of amicus filings – do not seem overly concerned about amici curiae abuse of their positions"). Nor has the Tenth Circuit expressed hostility toward amicus briefs. Therefore, *Glassroth*'s reasoning regarding fee-shifting is at least partially grounded in a limited (and perhaps minority) view of the proper role of supporting amicus briefs in modern legal practice.

Further, although the *Glassroth* court's examples of non-compensable time focus primarily on coordinating, soliciting, and drafting amicus briefs, the "in connection with" language creates a much broader rule of exclusion. Such rule arguably excludes categories of time that, in this Court's view, may be included in a fee award under the Act. For example, the *Glassroth* rule potentially

---

[10] In their reply, Prevailing Plaintiffs did not discuss or distinguish *Glassroth*. Instead, they cited one unpublished district court decision awarding fees for "conferences with amici or review of amici briefs." *Zbaraz v. Hartigan*, No. 84-C-771, 1988 WL 84721, at *10 (N.D. Ill. Aug. 5, 1988). However, *Zbaraz* was decided prior to *Glassroth*, and the losing party objected to the reasonableness of total time spent rather than general compensability.

excludes time spent reviewing supporting amicus briefs after they are filed of record in the case. Supporting amicus briefs often raise new arguments or policy considerations, and review may be necessary to prepare for oral argument or trial. The *Glassroth* rule also potentially excludes time spent on tasks contemplated by Federal Rule of Appellate Procedure 29(a), which provides that all amicus curiae, other than the United States or a state, "may file a brief only by leave of court or if the brief states that all parties have consented to its filing." The rule contemplates that parties' counsel will confer with each other or the amicus curiae regarding whether their client consents to filing. The Court believes time spent on tasks contemplated by Federal Rule of Appellate Procedure 29(a) are properly shifted to the opposing party.[11]  In addition to these specific examples of problematic exclusions, the *Glassroth* rule is overly rigid and eliminates a reviewing court's discretion.

The Court adopts the following fee-shifting rules regarding time spent in connection with supporting amicus briefs: (1) post-filing activities, such as reviewing an amicus brief for purposes of preparing the party's own brief, preparing for oral argument, or preparing for trial, are generally compensable; (2) pre-filing activities must be carefully scrutinized and are not compensable if they constitute brainstorming potential amici, strategizing regarding potential amici, coordinating potential amici, soliciting potential amici, or drafting/editing an amicus brief;[12] and (3) pre-filing

---

[11]  In this case, the parties filed a Joint Notice of Consent to Filing of Amicus Curiae Briefs on January 30, 2014, which was a blanket consent for all amicus briefs filed during the appeal. If this is a common practice, there will not be a significant amount of time spent on tasks required by Rule 29.

[12]  These practices are not prohibited by ethical or other rules; in fact, some are subject to disclosure requirements. *See* Fed. R. App. 29(c)(5)(A) (requiring disclosure of whether a "party's counsel authored the brief in whole or in part"). However, the Court agrees with the *Glassroth* court's reasoning that such practices should not be shifted to an opposing party.

activities may be compensable if they are required by any procedural rules or otherwise deemed necessary and reasonable by the court.  Time records related to amicus briefs should be highly specific or subject to exclusion.

Applying these rules to this case, time entries or partial time entries, in the total amount of $17,555.00, shall be excluded because they are aimed at one of the non-compensable pre-filing activities.[13]   Examples of excluded entries include: Holladay 8 ("Attention to amicus briefs coordination"); Holladay 38 ("Work on amicus contacts from categories list developed with Ken Upton (NAACP Legal Defense Fund, Constitutional Scholars, Interfaith Alliance, American Sociological Assn, and organizations representing voices of children)"); Holladay 56 ("Exchanges of information with potential amici from religious entities, political scientists and foreign and comparative law association"); Thai 4 ("Conference with Holladay and call with Sara Eisenberg regarding amicus strategy and outreach"); Thai 6 ("Call with Holladay to discuss amici outreach efforts and strategy"); and Thai 41 ("Review draft American Sociological Association brief"). Examples of permissible entries include: Holladay 10 ("Review Perry amicus briefs (Prop 8 case)");[14] Holladay 153 ("Review amicus filings of Lambda Legal and ACLU and reference in oral

---

[13]  The following time entries totaling $17,555.00 have been excluded or partially excluded:  Holladay 5 (1.0 only), 8, 23, 24 (1.5 only), 27, 29, 30, 31 (1.0 only), 32, 35, 36, 38, 39 (1.5 only), 40 (.3 only), 44, 45, 47 (1.5 only), 51 (1.8 only), 52, 53, 56-59, 66, 69, 70, 71, 77, 81, 89, 92, 93, 94, 98, 103, 113, 114, 119, 123, 125, 130, 148; Warner 4 (1.8 only); and Thai 4, 6, 7, 9, 10 (1.8 only); 13, 19, 41, 91, 94.

[14] The Court deems time spent reviewing amicus filed in other cases to be generally compensable, if it is reasonable for an attorney to read such briefs to prepare his own case. Holladay 9, 10, 25, 28, and 31 are compensable because Holladay reasonably reviewed such briefs in preparation for oral argument.  Although Holladay also could have reviewed these filings for purposes of soliciting potential supporting amici, the Court finds that other permissible and reasonable purposes support the shifting of fees in this case.

18

arguments notebook");[15] Holladay 160 ("Review amicus briefs for arguments concerning rational basis test in connection with parenting, children, traditional marriage"); and Thai 100 ("Review amici briefs filed in support of appellees in our case").

### 5.      "Secretarial" Tasks

Defendant seeks exclusion of the following time expended by Thai: (1) 10.5 hours described as "[f]ormat, work on table of contents and authorities, final proof and polish" (Thai 88); and (2) 4 hours described as "[w]ork with Warner on converting and formatting response brief for filing" (Thai 87). Finalizing and proofreading a complex appellate brief addressing numerous constitutional issues is not a secretarial task. With respect to drafting the table of contents and authorities, lawyers too often delegate this task to support staff, resulting in significant errors. Accurate numbering, citations, and ordering of arguments can positively affect the overall impact of a brief, particularly at the appellate level. In contrast, when the table of contents leads a court astray, this sets a tone of carelessness and hurts a lawyer's credibility. Attention to these types of details by Thai is reasonable, particularly for a lengthy and complex appellate brief. *See W. Virginians for Life, Inc. v. Smith*, 952 F. Supp. 342, 345 (S.D.W. Va. 1996) (awarding fees for time spent drafting tables of authorities and rejecting argument that such tasks should be completed by clerical staff).

"Converting" and "formatting" a brief for purposes of filing are more secretarial in nature and present a closer question. However, significant formatting problems can result when converting documents to PDF files for electronic filing. Again, problems with formatting and headings can impact the appearance, organization, and overall effectiveness of a brief. For a brief of this import

---

[15]   The Court cross-referenced time entry dates with the filing date of specific amicus briefs in the Tenth Circuit to ensure the review occurred post-filing.

at the appellate level, the Court finds it reasonable that Thai personally oversaw or completed the converting, formatting, and electronic filing. Therefore, the Court will not exclude Thai 87-88.

### 6.      Time Spent Attending *Kitchen* Oral Argument[16]

On April 9, 2016, Holladay traveled to Denver, Colorado to witness oral argument in *Kitchen*, which was held one week prior to oral argument in this case. Defendant contends that this seven hours of travel time should be excluded because Holladay could have listened to the arguments online after they occurred. The Court disagrees. Attending the *Kitchen* oral argument in person, in order to observe the judges' demeanors and questions, was reasonable. *Kitchen* presented many of the same issues as this case and had the same appellate panel. Paying clients would willingly compensate counsel for this time. Therefore, the Court will not exclude Holladay 215, 218 or any corresponding costs.

### 7.      Time Spent by Holladay Traveling to Oral Argument

Defendant contends that Holladay's travel to Denver, Colorado to attend oral argument in this case should be reduced by 75% because Holladay did not provide evidence that he performed substantive work while traveling. Defendant relies upon *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990), wherein the court affirmed application of a 75% reduction of non-productive driving time. Prevailing Plaintiffs argue that Holladay's time was spent flying, that he did perform work during the flight, and that he did not double-bill for both preparation and travel. (Reply in Support of Mot. for Fees 8 n.16 (explaining that Holladay "included the travel time but not the

---

[16] The sixth through eighth categories could also be categorized in the "lack of billing judgment" objection. However, they are in the "non-compensable" section of charts attached as Exhibit A to Sartin's affidavit, and the Court therefore addresses them under Defendant's first objection.

attendant preparation time").)  In these circumstances, the Court finds the submitted time entry to be reasonable and finds no need for any percentage reduction.  Therefore, the Court will not reduce Holladay 234, 237, or exclude any corresponding costs.

### 8.      Time Spent by Warner/Thai Attending Oral Argument

Defendant argues that only Holladay needed to attend oral argument and that Warner and Thai's time and travel expenses should not be awarded.  The Court rejects this argument.  Thai, a constitutional law scholar and former U.S. Supreme Court clerk, offered expertise in Fourteenth Amendment law and appellate advocacy.  Warner assisted Holladay throughout the litigation, knew the history and facts of the case, and had established a long-term relationship with the clients.  Both worked on the appellate briefs and assisted Holladay in preparing for oral argument.  Neither attorney was there to "learn" or simply observe the argument; both played specific roles on the appellate advocacy team.  *See Democratic Party of Wash. State*, 388 F.3d at 1287 (explaining that time may not be billed for lawyers merely observing oral argument for learning purposes, but awarding fees for senior attorney and two junior attorneys in that case because their attendance at oral argument was reasonable given the complexity of the case).  Defendant also had three attorneys at counsel table during oral argument, demonstrating that this decision was reasonable.  *See id.* (finding that opposing party's use of three senior attorneys on appeal was "devastating" to their argument that prevailing party's use of three attorneys was unreasonable).  Therefore, the Court will not exclude Warner 18, 20, 21, Thai 121, 123, 124, or any corresponding costs.

### B.      Objection 2: Lack of Billing Judgment

Defendant further argues that certain time, although spent on compensable tasks, was excessive or duplicative.  Defendant has identified two overarching flaws in Prevailing Plaintiffs'

approach to the appeal, which it contends resulted in excessive billing: (1) unnecessary addition of Thai to the legal team, and (2) overcomplication of legal issues.  For reasons explained below, the Court rejects both arguments and finds that Prevailing Plaintiffs' counsels' strategic choices reflect proper billing judgment.

### 1.    Thai's Addition as Appellate Counsel

Sartin opines that Thai's involvement in the appellate process was "totally unnecessary" and that "delegating the brief writing task to Mr. Thai resulted in duplicative and uncalled for time billed by Mr. Thai learning the facts and law already known by [Holladay and Warner]."  (Sartin Aff. ¶ 8.) Sartin further contends:

> Because the facts were not in dispute, the legal issues had been fully briefed on cross motions for summary judgment, this Court supported its decision . . . with a detailed 68-page Opinion and Order . . . , only a small percentage of cases are reversed on appeal and a floodgate of recently-decided federal court decisions in favor of same sex marriage had been released at the time of Plaintiffs' appellate brief was drafted, . . . I believe that [Holladay] could have easily written the Response Brief . . ., or it could have been written by [Warner] or an associate with the Holladay & Chilton firm, supervised by [Holladay], without incurring the unnecessary expense of [Thai] while maintaining the same, or even greater, likelihood of success.

(*Id.* ¶ 9.)

The law firm of Holladay & Chilton accepted this case in 2009 after original counsel withdrew.[17]  As evidenced by their website and Holladay's declaration, Holladay & Chilton

---

[17]  Michael Salem ("Salem"), an Oklahoma civil rights lawyer who has challenged many Oklahoma laws as unconstitutional, stated:

> This was a very unpopular case when it was filed.  It was still an unpopular case when taken over by Don Holladay and James Warner.  No case had succeeded on the issue of same-sex marriage . . . .  My initial consideration of this case was that it would be very difficult to win, or successful only to a small degree.  This was not much changed when [Holladay and Warner] took over the case.

specializes in complex commercial and business litigation.   Although Holladay and Warner succeeded before this Court, it was reasonable for them to seek assistance from Thai for purposes of appellate advocacy.   Thai is a former Tenth Circuit law clerk, a former U.S. Supreme Court law clerk, and a law professor; his addition to their team undoubtedly resulted in stronger appellate advocacy and an increased likelihood of success.   In more routine cases, where facts or evidentiary trial rulings are paramount, it may not be necessary or beneficial to request assistance from a legal scholar on appeal.   However, this case presents complex constitutional questions with far-reaching implications, not a complicated set of trial facts.   A paying client in a case of this difficulty and importance would willingly compensate for Thai's services at the appellate stage, particularly since his time records reflect efficient researching, drafting, and editing.   Contrary to Sartin's assertion, Thai does not seek any fees for what the Court would deem "catch up" time.   If anything, his legal acumen and appellate experience resulted in time savings.

Defendant's contention that the rapid issuance of relevant decisions on same-sex marriage bans somehow simplified the appeal is particularly unpersuasive.   District court decisions preceding the Tenth Circuit's decisions in *Kitchen* and *Bishop*, while perhaps uniform in result, were not uniform in reasoning.   They required detailed review for relevant, helpful, or unhelpful reasoning and, in some cases, incorporation into the briefs.   These cases provided momentum for Prevailing Plaintiffs but certainly did not simplify the legal landscape or provide controlling precedent in the Tenth Circuit.   Thai's addition to the legal team was entirely reasonable, and the Court will not eliminate his time from the fee award or apply any percentage reduction to the fee award based on this argument.

---

(Salem Aff. ¶ 26, Ex. 5 to Mot. for Fees.)

Recruiting Thai to draft the appellate briefs was reasonable, but trial counsel must then rely on his expertise and avoid duplication of his efforts. Although not specifically raised by Defendant, the Court independently reviewed whether Holladay and Warner spent excessive time on briefing after Thai's addition to the team. In addition to time spent by Thai actually researching and drafting Appellees' Principal and Response Brief, Holladay spent approximately 14.5 hours reviewing, revising, or conferencing regarding the brief, while Warner spent approximately 36 hours reviewing, editing, conferencing, or finalizing the brief. The Court finds this three-person review process to be excessive. In order to reach a reasonable total of time spent on Appellees' Principal and Response Brief, the Court will reduce Holladay's hours by 5.5 and Warner's hours by 16, resulting in a $6,325.00 reduction. The Court does not find any excessive reviews or edits of Appellees' Reply Brief.

### 2.    Lack of Complexity

Defendant contends that excessive billing occurred because Prevailing Plaintiffs overcomplicated the issues on appeal. For example, Sartin stated that appeals from summary judgment are generally "not difficult" and may often be decided without any briefing at all:

> Appeals from summary judgment are not difficult. In fact, in Oklahoma state court, the parties are precluded from submitting any briefs on appeal; the appellate court decides the matter on the briefs submitted to the trial court.

(Sartin Aff. ¶ 4.) Supporting her conclusion that Prevailing Plaintiffs spent an excessive amount of time on this appeal, Jorgensen stated:

> The materials reveal that Plaintiffs Mary Bishop and Sharon Baldwin prevailed on one issue - that "Oklahoma's constitutional amendment limiting marriage to opposite-sex couples violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution." While the labor and rulings in the Northern District *Bishop* Case likely had an impact on other similar cases around the country, by the time the Kern 1-14-14 Order became final and appealable, the issue upon

24

which Bishop and Baldwin prevailed had been successfully litigated at the trial level and was on appeal at the Tenth Circuit, and Judge Kern had issued a stay of enforcement of his injunction in the Northern District *Bishop* Case, pending final resolution of any appeals, specifically noting that the United States Supreme Court had stayed the "nearly identical case on appeal from the District Court of Utah to the Tenth Circuit Court of Appeals, *see Herbert v. Kitchen,* U.S. Supreme Court Order in Pending Case 13A687 (Jan. 6, 2014)." Also, the United States Supreme Court had held that the definition of marriage as set forth in the federal Defense of Marriage Act (DOMA) was unconstitutional as a deprivation of the liberty of the person protected by the Fifth Amendment. *See, United States v. Windsor*, 133 S. Ct. 2675 (2013). In other words, despite Tulsa County's continued effort to support the constitutionality of the amendment to Oklahoma's Constitution, the 'handwriting was on the wall.' Having listened to the Tenth Circuit oral arguments in this case and in *Kitchen*, it was apparent to me that the judges clearly thought the same thing.

(Jorgensen Aff. ¶ 5.) Both Sartin and Jorgensen estimate that a fee award in the $100,000 range represents a more reasonable sum based on the overall appellate work performed.

Defendant's arguments reflect a lack of appreciation for the complexity of this appeal and the legal nuances in the Supreme Court's Fourteenth Amendment jurisprudence. For what should be obvious reasons, this was not a routine appeal from summary judgment in state court; instead, it presented a complex legal question in an uncertain and evolving legal landscape. Defendant herself requested permission to extend her appellate briefing page limitation by 7,000 words and stated that this "case presents one of the most important legal questions facing the federal judiciary today." (Appellant Sally Howe Smith's Unopposed Motion for Leave to File Oversized Brief 2, Ex. 1 to Reply in Support of Mot. for Fees.) Further, issues arose on appeal that were never briefed before this Court, such as whether Bishop and Baldwin had standing despite their failure to challenge certain state laws.

Prevailing Plaintiffs also had to address alternative grounds for affirmance. This Court took one particular path in striking down the Oklahoma law, *see supra* note 3 and accompanying text, and Defendant seems to argue that Prevailing Plaintiffs should have limited their appellate advocacy to

seeking affirmance on this ground. Defendant's suggestion is untenable. While many courts have reached similar outcomes on same-sex marriage bans, they have used differing rationales. Presenting the Tenth Circuit with other possible paths to affirmance – namely, that sexual orientation discrimination should be subject to heightened scrutiny under equal protection principles and/or that the law violated a substantive due process right and was therefore subject to strict scrutiny – was not only reasonable but required of a competent appellate advocate. *See generally* Andrew L. Frey & Roy T. Englert, Jr., *How to Write a Good Appellate Brief*, 20 No. 2 Litig. 6, at 6 (Winter 1994) (observing that appellate briefing "poses special problems, but presents special opportunities, for advocacy," and that "[t]he most common mistake made by trial lawyers is to think that they should do the same thing in the appellate court that they did in trial court"). Eliminating any doubt as to whether Prevailing Plaintiffs' counsel reasonably spent this time, the Tenth Circuit ultimately affirmed on different grounds than those articulated by this Court.

If there was "handwriting on the wall" as to how lower courts should apply *Windsor* to state-law bans, as implied by Jorgensen, this Court and many others certainly missed it. As explained in the Court's Order, *Windsor* left much ground to plow in analyzing a state-law same-sex marriage ban. *See Bishop*, 962 F. Supp. 2d at 1277-79. This is now evidenced by dissenting opinions in cases striking down same-sex marriage bans, the emergence of a circuit split, and the Supreme Court's acceptance of certiorari in subsequent appeals.[18] The contention that Prevailing Plaintiffs had little substantive work to do in light of *Windsor*, or any other existing precedent, is inaccurate and will not be used to reduce a fee award. *See Latta*, 2014 WL 7245631, at *7 (rejecting the defendant's

---

[18] At the time of this Order, the Supreme Court has conducted oral argument but has not issued a decision.

argument that challenge to same-sex marriage ban did not present complex issues) ("Whatever this case lacked in procedural complications or disputed issues of material fact, it surely made up in legal complexity. After all, the case involved constitutional issues of first impression not only in Idaho, but in all district courts in the Ninth Circuit.").

To the extent Jorgensen suggests that Prevailing Plaintiffs' workload should have been lessened due to the simultaneous appeal of *Kitchen*, the Court is unclear how *Kitchen*'s existence should have saved time. These two cases were not consolidated, and the plaintiffs and defendants in each case were required to zealously and simultaneously advocate before the Tenth Circuit. Prevailing Plaintiffs did not have the benefit of the panel's opinion in *Kitchen* when they wrote their briefs or when they prepared for oral argument. Surely Jorgensen does not suggest that, after hearing oral arguments in *Kitchen*, Holladay should have assumed he would win his oral argument and quit preparing. The existence of *Kitchen* actually increased Prevailing Plaintiffs' workload because they needed to stay fully informed of the briefing, amicus briefs, and oral arguments in that case in addition to working on their own.

### C. Objection 3: Thai's Hourly Rate

Defendant objects to Thai's requested rate of $400.00/hour, arguing that it does not reflect the market rate. Thai's expertise in the Fourteenth Amendment and appellate advocacy rendered him uniquely qualified to assist in the appeal, which raised numerous complex issues and required understanding of all possible legal avenues to the desired outcome of an affirmance of this Court's judgment. An Oklahoma-based client recently paid Thai $400.00/hour for legal services rendered in oil and gas litigation. (*See* Ragsdale Decl. ¶ 7, Ex. 4 to Mot. for Fees, at Ex. B.) A federal district court recently awarded fees at the rate of $400/hour for Thai's services in a challenge to the

constitutionality of an amendment to the Oklahoma Constitution banning Sharia law.  (*See* Salem

Decl. ¶ 30, Ex. 5 to Mot. for Fees.)  Plaintiffs have provided ample evidence that Thai's requested

rate of $400/hour is reasonable and an accurate reflection of what clients would pay for his service.

### D.    Court's Lodestar Calculation

Having addressed Defendant's objections, the Court calculates the lodestar as follows:

| | |
|---|---|
| Requested Amount | $368,827.50 |
| Deductions | |
| Cross-Appeal | ($55.00) |
| Supreme Court Brief | ($48,045.00) |
| Supporting Amicus Briefs | ($17,555.00) |
| Excessive Time (Principal and Response Brief) | ($6,325.00) |
| **Total** | **$296,847.50** |

### E.    Requested Enhancement

Prevailing Plaintiffs request an enhancement of the lodestar based on exceptional results

obtained, in an amount deemed appropriate by the Court.  In most cases, the lodestar calculation will

result in a "reasonable fee," which the Supreme Court defines as a "fee that is sufficient to induce

a capable attorney to undertake the representation of a meritorious civil rights case."  *Perdue*, 559

U.S. at 552.  There is a "strong presumption" that the lodestar figure represents a reasonable fee

award without the need for any enhancement.  *Id.* at  554.  However, such "presumption may be

overcome in those rare circumstances in which the lodestar does not adequately take into account

a factor that may properly be considered in determining a reasonable fee."  *Id.*  Examples of such

circumstances include: (1) to compensate for a low hourly rate that does not reflect counsel's true

market value; (2) to compensate counsel for delay in receiving reimbursement for a large outlay of

litigation expenses; and (3) to compensate counsel for an exceptional delay in receiving the payment

of fees.  *Id.*

For purposes of this appeal-related fee award, the Court's lodestar calculation results in a reasonable fee without any enhancement. The Court has awarded time to three billing attorneys at prevailing market rates and has made very few "duplication" reductions, taking into account the complexity of the appeal. There has been no delay in receiving reimbursement for appellate expenses or the payment of fees. Accordingly, the Court declines to apply any multiplier or other enhancement to its lodestar calculation.

## V.      Conclusion

Prevailing Plaintiffs' counsel expended reasonable hours on the appeal, exercised sound billing judgment, avoided unnecessary duplication of work except where reduced by the Court, and achieved the result sought by Prevailing Plaintiffs. Plaintiffs' Motion for Judgment on Amount of Appeal-Related Attorneys' Fees (Doc. 299) is granted in the amount of $298,742.77, which includes $296,847.50 in attorneys' fees and $1,895.27 in costs.[19]

Prevailing Plaintiffs may submit a supplemental motion requesting fees for time spent preparing this fee application no later than May 8, 2015. Defendant shall file any objection to such request no later than May 22, 2015, and Prevailing Plaintiffs shall any reply no later than May 27, 2015. The Court will enter one judgment following its ruling on the supplemental motion.

**SO ORDERED** this 1st day of May, 2015.

**TERENCE KERN**
**United States District Judge**

---

[19] The Court has subtracted $47.10 from the cost award based on its exclusion of time spent on the Supreme Court brief. The Court has not made any other reductions from Prevailing Plaintiffs' requested costs.

29